## THE PEOPLE *v.* CARPENTER.

The question whether a town has been legally erected may be tested in an action in the nature of quo warranto against one claiming to exercise the office of supervisor of such town.

The act of a board of supervisors dividing a town and forming a new one from a portion thereof, only described the dividing line, *held* that the uncertainty was cured by the reference in such act to the petition, &c., upon which it was founded, and from which it appeared that the new town was to lie south of the line of division, and by proof *aliunde* that the place named in the act for holding the first town meeting was south of such line.

The statute (ch. 194 of 1849), does not, *it seems*, require that the published copy of notice of the application of twelve freeholders for the erection of a new town shall contain the names of such applicants. It is sufficient that the notice posted should be thus subscribed.

An affidavit stating that a notice was left with another person to be posted up, " which was done," construed as a positive averment of the posting.

The act of the supervisors, is, it seems, one of a legislative character in favor of the regularity of which all presumptions are to be indulged. Those who would impeach it, have the burden of disproving a compliance with the conditions imposed by law as requisite to the exercise of the power.

APPEAL from the Supreme Court. Action in the nature of *quo warranto*, brought by the attorney-general in the name

of the People to test the right of the defendant to exercise the duties and powers of the office of supervisor of the town of Afton, in the county of Chenango. The complaint alleged that he had unlawfully usurped the duties of the office of supervisor of that town, and prayed judgment that he might be ousted and excluded therefrom It further alleged that no such town legally exists, and that such acts of. the defendant are without authority of law. In answer, it was set up that the town of Bainbridge, in said county, was legally divided by the board of supervisors thereof at their annual meeting in November, 1857, and a new town created therefrom by the name of Afton; that the defendant, at the first town meeting held in said new town, was duly elected the supervisor thereof, and exercises the duties and powers of said office as he lawfully may do. The trial was before Mr. Justice CAMP-BELL (without jury) who found the facts, which are sufficiently stated in the following opinion. The judge held, that the formation of the town of Afton was in all respects valid, and that the defendant was duly elected supervisor thereof. The judgment entered by his direction, dismissing the complaint, was affirmed at general term in the sixth district, and the plaintiff appealed to this court.

*Henry R. Mygatt* for the appellant.

*Giles F. Hotchkiss*, for the respondent.

DAVIES, J. No question is made upon the legality of the defendant's election; and the decision of the case turns upon the sole point, whether the town of Afton has been legally created. If such an office exists as that of supervisor of the town of Afton, it is not denied that the defendant is entitled to discharge its duties. And it is conceded that the solution of that question depends on the fact whether or not the town of Afton has a legal existence.

It was made a question on the argument, whether this action was the appropriate remedy, to bring up for decision

that point. It was said, that if there was no such town as the plaintiffs allege, then there could be no office of supervisor of the town, which did not exist; and, consequently, the defendant did not in fact usurp the duties of any office. But we think this objection too technical. The object of the framers of the Code, in the provisions in reference to these actions, manifestly was to provide a speedy and effective mode of determining the claims of persons to exercise the duties of any office within this State; and the determination of the claims of individuals to discharge the duties of any office, would necessarily involve the determination of the existence of the particular office. If the office, the duties of which were usurped and unlawfully exercised, had no legal existence, it would follow that no usurpation was established; and the same result would obtain, if it should be ascertained that the office legally existed, and the party claiming to exercise its duties was lawfully entitled so to do. In either aspect, the determination of the legal existence of the office was involved, and must necessarily be decided. These views received the sanction of this court in the case of *The People* v. *Draper* (15 N. Y., 532). That was an action under the Code to test the right of the defendants to the office of police commissioners, under an act of the legislature to establish a metropolitan police district. Their right to discharge the duties of the office, and their title to the office, depended on the question, whether or not such an office had a legal existence; and that question was resolved by the determination of the constitutionality of the act of the legislature creating such an office. This court proceeded to the examination and decision of that question; and holding the law creating the office to have been constitutionally passed, declared that the defendants did not usurp and unlawfully intrude into the particular office, and gave judgment in their favor. It might have been said with equal force in that case, as in this, that the office from which it was sought by that action to oust the defendants, was, upon the plaintiffs' own showing, no office at all, but an assumption on the part of the defendants to exercise

The People *v.* Carpenter.

the duties of a mere pretended office; that, therefore, the duties of no actual office were usurped, and consequently the action could not be maintained. We do not yield our assent to this course of argument, but think this the proper action to determine the question as to the right of the defendant to discharge the duties of the office of supervisor of the town of Afton.

This legitimately brings before us for decision, the question whether that town has been legally created and such an office has a legal existence. Previous to the Constitution of 1846, the erection and division of the towns in this State, and the alteration of the boundaries thereof, rested solely with the legislature, and was governed only by its discretion. To relieve the legislature of this branch of administration, purely local in its character, the clause in the Constitution of 1846 was inserted which provides that " the legislature may confer upon the boards of supervisors of the several counties of the State such further powers of local legislation and administration as they shall from time to time prescribe." (Art. 3, § 17.) In pursuance of the authority thus conferred, the act of April 3, 1849 (ch. 194), was passed entitled "An Act to vest in the board of supervisors certain legislative powers," &c. By the first section of this act, the boards of supervisors of the several counties in this State, at their annual town meeting have power within their respective counties, by a vote of two-thirds of all the members elected, to divide or alter in its bounds any town, or erect a new town upon the application of twelve freeholders of each of the towns to be affected by the division, and on being furnished with a map and survey of all the towns to be affected, showing the proposed alterations; and if the application be granted, the board is to cause a copy of the map and a certified copy of the action of the board to be filed with the Secretary of State. It is undeniable that all the provisions of this section have been strictly complied with in the present proceedings. The town of Bainbridge was the only one to be affected by the division, and twelve freeholders of that town made the application "to divide the town of Bain·

bridge (nearly as the same is now divided into election districts), and to make a new town of the southern portion thereof." It described the portion of the then present town, which they desired to be erected into a new town. It was the southern portion thereof. The board was furnished with a map and survey of the town to be affected, and the application having been granted, the board caused to be filed with the Secretary of State a certified copy of their action, and of said map. This was all this section required. It is now urged that this proceeding is void for uncertainty as the certificate of the action of the board only describes the dividing line, but does not specifically declare which part of the town of Bainbridge is erected into the new town. If there is any ambiguity in this respect, which is not removed by the subsequent part of the certificate, we think the recitals in the act of the board referring to the application of the freeholders, and the notices published and posted, and adopting them as part of the proceedings, which application and notices form a part of the records of the board, are sufficiently explicit to warrant us in regarding the applications and the notices as a portion of the proceedings, and they may consequently be considered *in pari materia.* A reference to them shows that the southern part of the old town was sought to be erected into a new town, and the act of the board must be construed in reference to this application and the notices, which it in terms adopts and makes part of the proceedings. With these aids there is no difficulty in rendering certain and explicit the action of the board of supervisors, and thus clearly ascertaining that it was that portion of the old town lying south of the line described which was erected into a new town.

We think this view is greatly strengthened by the subsequent portion of the act of the board. Section third of the act of the legislature above referred to, declares that whenever the board of supervisors shall erect a new town in any county, they shall designate the name thereof, the time and place of holding the first annual town meeting therein, and three electors of such town (that is of the new town) are to be designated,

to preside at such meeting, and the board shall also fix the places for holding the first town meeting in the town from which such new town shall be taken. In the act of the supervisors, in the first section thereof, after setting forth the boundary line or line of division between the new and old town, they declare the premises embraced therein to be erected into a new town to be called Afton, and that the remaining part of said town of Bainbridge shall remain a separate town by the name of Bainbridge. Section third declares that the first annual town meeting for said newly erected town should be held at the house of Rufus P. Greene in such town, and appoints the day for holding the same. And by section fourth three persons are appointed to preside at such town meeting. Section fifth designates the place for holding the then next annual town meeting for said town of Bainbridge. Now it appeared on the trial of this action that the place designated for holding the first town meeting in said new town, was south of the said division or boundary line, and that the persons designated to preside thereat, all resided south of said line, and that the place for holding the next annual town meeting for said town of Bainbridge was north of said division line. Reading, therefore, the act of the board in connection with the well established and authenticated facts, there remains no uncertainty as to which part of the old town of Bainbridge was set apart for, and erected into, a new town, and which part remained and continued the town of Bainbridge.

There remain to be considered the questions arising upon the alleged defective notices and proof of posting. The second section of the act of the legislature above referred to, provides that notice in writing of the intended application to the board of supervisors, subscribed by at least twelve freeholders of the town to be affected, shall be posted in five of the most public places in the town to be affected, for four weeks next previous to such application, and a copy of such notice shall also be published for at least six weeks successively immediately before the meeting of the board in all the newspapers of the county, not exceeding three. The first objection urged in reference to

the notice is, that the copy of the notice published in the news-papers was not subscribed by twelve freeholders. A conclu-sive answer to this objection is, that the statute does not require the copy of the notice to be published, to be subscribed by the freeholders. The notice posted must be subscribed by not less than twelve freeholders, but no such subscription is required to the copy of the notice to be published in the newspapers. The notices published were, therefore, in conformity with the statute. The affidavits in the case show that five notices were posted in the town, subscribed by the requisite number of free-holders. A criticism was made in reference to the affidavit of posting of one of the notices, which was stated to have been left with another person to be posted up, which (the affidavit states) "was done." We think this a positive averment by the defendant that the notice was posted. It states unequivo-cally that it was done, and nothing appears to the contrary.

But we apprehend that the validity of the act of the super-visors does not depend upon the sufficiency of these affidavits. There is nothing in the act of the legislature which requires such proof to be made to them, and if no evidence had been offered of the publication and posting of the notices, we should be warranted in assuming that all the preliminary steps required had been taken. The act of the board was one of legislation and the validity of a legislative act cannot be impeached by an omission to show that the preliminary notices, required to be given prior to the application for the law, had been given. Those who challenge the existence of the law, were called on to show the notices were not given. It was not for those act-ing under the law to make this proof, even if it were necessary. But it is not essential to the validity of the act that proof of the publication and posting of the notices should be furnished. "*Omnia præsumunter rite, et solemniter esse acta donec probatur in contrarium.*" In *Smith* v. *Helmer* (7 Barb., 416), it was urged that an act of the legislature could not be given in evidence for the want of proof that notice of the application therefor had not been given pursuant to 1 Revised Statutes, 155, section 1. The Supreme Court held that such proof was unnecessary.

Again, the provisions of the act in reference to giving the notices by publication and by posting may be regarded as directory merely, and not as conditions precedent to giving the board jurisdiction of the subject matter. The seventh section of the amended charter of the city of New York (Laws of 1830, ch. 122), enacted that on all votes of the common council of said city imposing any assessment, the ayes and noes should be called, and the resolution with said notes should, immediately after the adjournment of the common council, be published in all the newspapers employed by the common council. In *Elmendorf* v. *The Mayor, &c.* (25 Wend., 693), an assessment had been imposed by the common council, and it was objected to its legality that these formalities had been omitted. The Supreme Court held the statute merely directory and not imperative, or a condition to the validity of the ordinance. The same point was decided in *Striker* v. *Kelly* (7 Hill, 9).

Upon any view which we can take of this case, we are of the opinion, that the judgment of the Supreme Court is correct, and should be affirmed.

COMSTOCK, Ch. J., DENIO, LOTT, JAMES, MASON and HOYT, concurred; three of them, however doubting whether the published notice was not defective in not containing the names of the subscribers, but regarding the statute on this point as directory; SELDEN, J., was absent.

Judgment affirmed.