## REYNOLDS & AHERN v. J. H. SCHWEINEFUS.

In a suit by a contractor against a property owner to collect an assessment for grading and paving a portion of Front street, where the defense was that the improvement had not been reported and recommended by the board of city improvements, though it appeared that the petition for the improvement was presented January 8, 1861, as follows:

"At a *joint session* of the board of city improvements and committee of public improvements of the city council held this day—in attendance, John Horton, Frederick Stagge, Jeremiah Kiersted, city commissioners, and A. W. Gilbert, city civil engineer; committee of public improvements of the city council, present J. M. Noble, chairman. In the absence of the president, Mr. Kiersted was called to the chair, when the following paper referred to the joint board was taken up and disposed of: The petition of Lewis Glenn and others, property holders on East Front street, in the Seventeenth ward, seeking to have said street graded and paved with bowlder stone. On motion, the prayer of the petitioners was granted, and on motion of Mr. Kiersted, the clerk was instructed to prepare and transmit to the city council an ordinance to grade and pave with bowlder stone Front street, from Washington street to the east line of the city of Cincinnati." Which meeting was immediately succeeded by a meeting of the board of city improvements, at which no action was taken on the matter at all; and though it further appeared that the committee on public improvements of the city council soon after reported the ordinance as coming from the board of city improvements, which was passed, the contract made, work done, and assessment levied:

*Held*, that the statute which declares that no ordinance for the improvement of a street shall be passed by the city council without the report and recommendation of the board of city improvements, requires that the report and recommendation shall be recorded in its proceedings and made to the city council; that such recommendation and report are jurisdictional; that parol evidence is not competent to prove them, and that upon the evidence in this case, no presumption arises that the ordinance was passed at the recommendation and upon the report of the board of city improvements, as required by statute.

In General Term on Error.

*S. A. Miller*, for plaintiffs.

*Hoadly, Jackson & Johnson* and *Ware & Disney*, for defendant.

HAGANS, J. This is a suit by the plaintiffs, who are contractors, to recover an assessment against a property owner for grading and paving Front street, on which his property abuts. The objection the defendant makes is, that the ordinance under which the work was done was passed without the previous report and recommendation of the board of city improvements.

The bill of exceptions shows that the evidence on this point consists of a transcript from the records of the board of city improvements, together with the oral testimony of Jeremiah Kiersted, to the introduction of the latter of which the defendant objected, and the objection was overruled and the testimony received. The court found for the plaintiff; motion for a new trial was overruled and exceptions taken, and judgment was rendered for the plaintiff.

The whole case depends upon the admissibility of the evidence of Mr. Kiersted, referred to, as all the other necessary steps are admitted to have been taken.

The transcript from the alleged proceedings of the board of city improvements is as follows:

"OFFICE OF THE BOARD OF CITY IMPROVEMENTS,  }
    CITY BUILDINGS, *Cincinnati, Jan.* 8, 1861. }

" At a joint session of the board of city improvements and committee of public improvements of the city council, held this day—in attendance, John Horton, Frederick Stagge, Jeremiah Kiersted, city commissioners, and A. W. Gilbert, city civil engineer; committee of public improve-

ments of the city council, present J. M. Noble, chairman.

"In the absence of the president, Mr. Kiersted was called to the chair, when the following papers referred to the joint board, were taken up and thus disposed of: The petition of Lewis Glenn and other property holders on East Front street, in the Seventeenth ward, asking to have said street graded and paved with bowlder stone. On motion, the prayer of the petitioners was granted, and on motion of Mr. Kiersted, the clerk was instructed to prepare and transmit to the city council an ordinance to grade and pave with bowlder stone Front street from Washington street to the east line of the city of Cincinnati. The remonstrance of Joseph Cox against the paving of L'Hommedieu alley between Plum street and Central avenue was referred to the commissioners.

"The joint session then closed, and the board of city improvements proceeded to regular business. The minutes of the preceding meeting were read and approved."

Mr. Kiersted testifies positively that the board of city improvements ordered an ordinance to grade and pave Front street to be sent to the city council, which afterward passed it; that the ordinance originated in the board of city improvements, and was by it recommended to the city council; that he was particular about it, he being one of the city commissioners and a member of the board, as the work was in his district; that the recommendation by the board was made on a little slip of paper, which was attached to the ordinance and accompanied it; and that if the original ordinance could be found, the slip of paper referred to would be found also, if not detached.

The only question presented by the record in this case is, whether the action of the board of city improvements in the premises can be proved by parol evidence. As will be seen, the record of the action of the board contains no evidence whatever of the alleged recommendation by the board of the passage of the ordinance to grade and pave,

under which the work was done.   Waiving this, however, this case differs wholly from the case of *Fisher* v. *Graham*, ante 113, for there the record of the board of city improvements showed the due recommendation of the ordinance and direction to the clerk to prepare and transmit the ordinance, which he did, and a due report in writing, though not signed by him.   The report and recommendation of the board to the city council to do this work is jurisdictional, because they are conditions precedent to the exercise of the authority to pass a valid ordinance for the improvement, or for the assessment on the property adjoining.   This has been frequently held in this court. See *Walker* v. *Potter*, 18 Ohio St. 85.

The city council could not originate the action taken. That must be done by the board of city improvements. No such work as this "shall be ordered or directed by the city council, except on the report and recommendation of the said board, * * * who shall report from time to time to the city council. * * * The city council shall take such action thereon as may be deemed proper." The board of city improvements is not a corporation of itself, but is a co-ordinate branch of the city government, charged with duties of the greatest moment.   By the very constitution of the board, as of most public or corporate bodies, it is necessary, from the highest motives, to keep a record of its proceedings. How else could the vast interests of our citizens, confided by law to the care of this board, be properly protected or its duties be properly discharged? Accordingly, by the ordinances of the city, the plan of keeping a record was adopted by having a clerk of the board, who is charged with keeping a correct record of all the proceedings of the board, and directed to prepare such ordinances as appear in proof in this case, and to report in writing.   Especially is it indispensable that such fundamental action of the board as consists of recommendations and reports of all such improvements as the one in this case, should appear on the record of the board to be made

and directed, and this evidence only is competent. It is necessarily exclusive of any other proof, because the facts to be proved by it are jurisdictional.

We should regard it as a dangerous principle to allow oral proof of such important proceedings, or that these records should be supplemented by oral testimony, as it might happen years after the alleged action was had, and would, therefore, be *uncertain* and unsatisfactory. The certificate of the clerk of the board that such action was had is not the only method of proving that fact, for the law does not exclude other methods of proving it The production of the record itself by the board to the council would be sufficient. But there must be sufficient proof of such action, and a sufficient report to the council, which can only be by showing from the record of the board that the appropriate action was had. Nothing in these respects can be presumed favorably. Indeed, the very absence of any record of action by the board in the premises, it appearing that they had the matter under consideration, raises a presumption that it either was deemed best to take no action at all, or else that the sentiment was unfavorable to the project.

The testimony of Mr. Kiersted ought to have been rejected by the judge at Special Term.

A majority of the court think that we have gone quite to the verge on this question in the case of *Fisher* v. *Graham*, ante 113.

Judgment reversed and cause remanded.


TAFT, J., dissented.

This is a suit by a contractor to recover against a property owner the amount of an assessment on his property for grading and paving Front street, on which his lot fronts. The work has been done, and the defendant denies his obligation to pay for it, because he denies the validity of the ordinance under which it was done.

The claim is that the city council passed the ordinance

without the recommendation by the board of public improvements.

The evidence as to the fact consists of a transcript from the proceedings of the board of public improvements, and the testimony of Mr. Kiersted, the commissioner of the district in which the work was done, both of which pieces of evidence were objected to by defendant's counsel.

The transcript of proceedings was as follows, viz:

"OFFICE OF BOARD OF CITY IMPROVEMENTS,  
CITY BUILDINGS, *Cincinnati, Jan.* 8, 1861.

"At a joint session of the board of city improvements and committee of public improvements of the city council, held this day, in attendance John Horton, Frederick Stagge, Jeremiah Kiersted, city commissioners, and A. W. Gilbert, city civil engineer; committee of public improvements of the city council, present J. M. Noble, chairman. In the absence of the president, Mr. Kiersted was called to the chair, when the following papers, referred to the joint board, were taken up and thus disposed of:

"The petition of Lewis Slevin and other property holders on East Front street, in the Seventeenth ward, seeking to have said street graded and paved with bowlder stone. On motion, the prayer of the petitioners was granted; and on motion of Mr. Kiersted, the clerk was instructed to prepare and transmit to the city council an ordinance to grade and pave with bowlder stone Front street, from Washington street to the east line of the city of Cincinnati.

"The remonstrance from Jos. Cox, remonstrating against the paving of L'Hommedieu alley, between Plum street and Central avenue, was referred to the commissioners.

"The joint session then closed, and the board of city improvements proceeded to regular business. The minutes of the preceding meeting were read and approved."

Mr. Kiersted testified positively and explicitly, that the board of city improvements did recommend the ordinances

to grade and pave the street, in the usual way, by instruct-ing the clerk to prepare the ordinance and hand it to the council, with a recommendation attached to it, on a sepa-rate slip of paper, authenticated by the clerk.

The first question to be determined is, whether the requisition as to this report and recommendation is juris-dictional, so that an ordinance passed without it would be void; or directory, prescribing this as a rule of proceeding, but not essential to the validity of the ordinance.

In favor of the latter view, is the fact that the power of improving streets is inherent in the city council, as the legislative department of the city government. The board of city improvements does not order any improvements, or appropriate any money to make them. All this falls within the province of the city council. Nor is the mere form of expression in the statute as affirmative or negative, decisive of the question whether a requirement is di-rectory, or jurisdictional. The subject matter of the act is to be considered, and all the circumstances connected with the requisition.

By the charter of New York, under the act of 1830, section 7, it was provided, in imperative language, " that the ayes and noes should be called and published when-ever a vote of the common council should be taken on any proposed improvement involving a tax or assessment upon citizens." 7 Hill, 29.

But this provision was "construed as merely directory; the essential requisite being the determination of the cor-poration, and not the form or manner of expressing that de-termination." *Striker* v. *Kelly*, 7 Hill, 24.

In *The People* v. *Carpenter*, 24 N. Y. 92, it was laid down that the validity of a legislative act of a municipal corpo-ration can not be impeached by want of evidence that the preliminary notices, required to be given prior to the application for the law, had been given. It was not for those acting under the law to make this proof, even if it were necessary. But it is not essential to the validity of

the act, that proof of the publication and posting of the notices shall be furnished. " *Omnia præsumuntur rite, et solemniter esse acta donec probatur in contrarium.*"

The question of making the improvement was a legislative question, and the presumption is, that all the preliminary steps were rightly taken. Such is the evident purport of the decision in *The People* v. *Carpenter*, and this is in accordance with reason and the current of precedents.

In the case of *Fry* v. *Booth*, 19 Ohio St. 25, decided by our Supreme Court at the present term, it was held that section 5 of the election act of May 3, 1852, providing " that at all elections to be holden under this act, the polls shall be opened between the hours of six and ten in the morning, and closed at six in the afternoon of the same day," was *directory*, and that a departure from a strict observance of its provisions does not necessarily invalidate the election, where it appears that no fraud had been practiced and no substantial right violated.

In the case of *Downing* v. *Rugar*, 21 Wend. 182, it was held that where the statute conveyed a joint authority upon the two overseers of the poor, it was necessary they should confer and act together; but that there was a strong presumption that they had so acted, and that the court would so regard it unless the evidence expressly shows the contrary. The court say, p. 184: " The presumptions of which I have spoken, especially those arising from official duty, are very strong, and that the duty was not performed must be shown by calling those whose relation to the transaction can put a direct negative upon it, unless their absence be accounted for."

In that case one of the two overseers had acted in an important matter which required the concurrent action of both. The court say that " if the absent overseer had not given his consent and authority to proceed, he alone could say so; and we think it due to the defendant and the general safety of this kind of officers to presume they

proceeded regularly, till the best sources of information are exhausted."

· In the case of *Lessee of Ward* v. *Barrows,* 2 Ohio St. 241, the question turned upon the fact whether the delinquent list was properly sworn to before the auditor by the collector. This was by statute, made necessary to the validity of the sale. The auditor proceeded, in his settlement with the collector, as if the list of delinquencies was correct, and gave credit according to it, which it would have been a breach of duty on his part to have done, unless the list had been properly sworn to, as required by the statute. The court say : " Under such circumstances, unless the statute makes written evidence indispensable, the officer will be presumed to have done his duty until the contrary appears." 1 Greenl. on Ev. 51 ; Matthews on Presumptions, 36. The law will presume all to have been rightly done unless the circumstances of the case overturn this presumption; and, consequently, as stated by the Supreme Court of the United States in *Bank United States* v. *Dandridge,* 12 Wheaton, 70 : " Acts done, which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter."

"Facts presumed are as effectually established as facts proved, where no presumption is allowed; and hence, in accordance with this long established rule of evidence, the court in *Lessee of Winder* v. *Starling,* 7 Ohio, 539, were entirely justified in saying that the act of the auditor, in allowing the credit and making the certificate, which could only lawfully be done after the delinquent list had been verified by the collector, was presumptive proof that the oath had been administered."

The court cite, as illustrating the various applications of the doctrine, *Williams* v. *East India Co.,* 3 E. 192 ; *Kelly* v. *Connell,* 3 Dana, 532 ; *Wheelock* v. *Hall,* 3 N. H. 310 ; *Brown* v. *Connelly,* 5 Blackf. 390 ; *Hart* v. *Root,* 19 Ohio, 345 ; *Jackson* v. *Shaeffer,* 11 Ohio, 513 ; and 9 Conn. 110.

In the case of the *Lessee of Coombs and Ewing* v. *Lane,*

4 Ohio St. 112, the same court, Thurman, C. J., giving the opinion, adopt this principle as applied in *Ward's Lessee* v. *Barrows*, 2 Ohio St. 246, and in *Winder's Lessee* v. *Starling*, 7 Ohio, 539, to the entry of school lands, presuming that lands which the register of the land office had entered on his "tract book" as "school lands" had been selected, which the statute required before they could lawfully become school lands.

In the present case there is no evidence that the necessary recommendation by the board of city improvements did not precede the action of the city council.in passing the ordinance to improve. Leaving out of our view, for the present, the testimony of Mr. Kiersted, who testifies positively that such recommendation was made, does it appear that the city council have been guilty of a breach of their legislative duty, by determining to make the improvement without the recommendation of the board of improvements. We have in evidence, as a record of the proceedings of the board, a paper which purports to give the minutes of a meeting of the board jointly with Mr. Noble, chairman of the committee on public improvements of the city council. . That record shows that there was a clearly expressed purpose of the board to prepare an ordinance and recommend its passage.

It is claimed that these proceedings were invalidated by the presence of Mr. Noble, and by calling the meeting a joint meeting. But if the board of city improvements acted on the subject and recommended the ordinance, I think it is not material how many other persons may have done the same thing. The argument for the defendant is, that it would be possible for the recommendation to be carried in such a joint meeting, where there was not actually a majority of the board in its favor. But it is not our duty to presume that these officers of the city government violated their duty, when it is altogether more probable that they performed it. There is no reason to infer from the record, that any member of the joint

meeting did not favor the recommendation of the ordinance. If the joint meeting meant that the committee were one party, and the board were the other party to the joint meeting, the measure could not have passed but by the concurrence of both parties. But I think that the more reasonable theory of that meeting is that the presence of Mr. Noble was merely for consultation and information, and did not prevent the board from acting in good faith upon the subject of their deliberation, and that it did act, ordering their clerk to prepare the ordinance and present it to the city council, with a recommendation that it pass in the usual way.

Besides, there is no provision of the statute requiring that the report and recommendation should be of any particular form, or that it should be in writing even.

The presumption is strong that this preliminary step was complied with. The record of the proceedings of the council shows that that body acted upon it as coming from the board; and this record of the proceedings of the board just preceding the meeting of the city council really shows the same thing, and by no means shows anything to rebut the strong presumption that the city council did have what they assumed in their proceedings to have had, the report and recommendation of the board to proceed upon.

Here is no ground whatever to suppose that this work has not been done with the full concurrence of the board of city improvements. It had the consideration of that board, as appears from their minutes, and there is no indication of any dissent on the part of any member. The city council proceeded on that hypothesis; the work was contracted for, and all done and well done, according to the testimony, and the defendants have had the benefit of it. It is now proposed to have them excused from paying their share of the cost, and the burden of their local improvement thrown upon the city generally,

by the suggestion that the city council did not have for-
mal evidence of the recommendation by the board of city
improvements before proceeding to contract for the work,
presuming that the city council, as well as the board of
city improvements, violated their duty instead of perform-
ing it.   This claim asks us to deal with the official repre-
sentatives of the city in a harsh and suspicious manner,
prejudicial to the public interest and contrary to the pre-
sumption in favor of official acts uniformly recognized in
all courts of justice.

But I think that the evidence of Kiersted, the commis-
sioner, is also competent evidence, and if so, it does prove
positively the fact of a preparation and recommendation of
the ordinance.   The presumption arising from the circum-
stances is strong without that testimony, and as I think
sufficient.   But this testimony is positive.

Objection is taken to this testimony on the ground that
the board have a clerk and a record, and so can only speak
by its record.

The statute creating the board requires no clerk and
no written record, and requires no written report or recom-
mendation.   The clerk and minutes of proceedings have
been created by the city council.   Nor has the city coun-
cil curtailed the power of the board in its mode of expres-
sion.   It has given it a clerk, and given authenticity to the
clerk's certificate; but it has not, if it could have done so,
declared that that was the only mode in which the board
could communicate.   So that if the board had by vote
authorized the civil engineer, who is also a member of the
board, to communicate to the city council the report and
recommendation of an improvement, the city council could
act upon it though it were merely verbal.   The object of
the statute was to give the city council the benefit of the
preliminary advice of the board before entering upon a
public work.   It was not a matter of form at all, but of
substance.

The communication between these two bodies is not

between two corporations, but between two co-operating branches of the same corporation. There is no legal reason why it could not be verbal, and if so it can be proved verbally. We think, therefore, that the evidence of Kiersted was competent; and his official position at the time renders his testimony of great weight. No man in the city government would be so likely to know precisely what was done on this subject as he. It fell directly within the line of his duty.

In *United States* v. *Fillebrown,* 7 P. 28, which arose upon the proof of the proceedings of the board of commissioners of the hospital fund, at Washington, connected with the navy department, the court say, on p. 47: "There is no general principle of law known to the court, and no authority has been shown, establishing the doctrine that all the proceedings of such boards must be in writing, or that they shall be deemed void, unless the statute under which they act shall require their proceedings to be reduced to writing. It is certainly fit and proper that every important transaction of the board should be committed to writing; but the law imposes no such indispensable duty. The act of 1811, 4 Laws U. S. 311, constituting the fund for navy hospitals, only makes the secretaries of the navy, treasury, and war departments *a board* of commissioners by the name and style of commissioners of navy hospitals, and gives some general directions in what way the fund is to be employed; but the mode and manner of transacting their business is not in any respect prescribed."

It is very much the same in the present case, and it would seem that the mode of proceeding was much the same in that board as in this, with its clerk and minutes.

The court proceeded to say: "It is not true, even with respect to corporations, that all their acts must be established by positive record evidence."

In the case of *United States* v. *Dandridge,* 12 Wheat. 69, the court says: "We do not admit, as a general proposition,

that the acts of a corporation are invalid merely from an omission to have them reduced to writing, unless the statute creating it makes such writing indispensable as evidence or to give them obligatory force." The court held the parol testimony of Mr. Southard, a member of the board, in that case competent to establish the acts of the board.

The statute creating this board of city improvements has no provision rendering it necessary that its acts should be reduced to writing or recorded.

This subject has been considered very carefully in the courts of Wisconsin, as may be seen by reference to R. S. Wis., ch. 19, secs. 2, 53, 54, 56–59; 16 Wis. 519. The same doctrine, however, is illustrated in the courts of nearly all the States. 34 Vt. 256–262; 20 Vt. 440; 52 Me. 535; 48 Me. 440; 4 Ohio St. 112; 5 Ohio, 136; 3 Ohio, 94; 16 E. L. & E. 55–62.

Considering the whole case, I find no adequate excuse or reason for relieving the property holders on Front street from bearing their respective shares of the burden of making this improvement which they are enjoying.