It is claimed, however, that no interest should be given. The right to it has been settled. The land of which the defendants became the owners, was charged with the payment of the legacy, and they took it *cum onere;* * and the land yielding profits, the payment of interest upon the legacy is just and reasonable, though not demanded when due. † It should be computed from the 8th May, 1857, which was one year after the death of Eunice.

The testator contemplated that a period of one year should elapse after the legacy became due, before its payment could be enforced.

The judgment must, therefore, be affirmed as to the legacy given to Eunice, and reversed as to the legacy given to Sarah, without costs to either party.

DAVIS, P. J., and DANIELS, J., concurred.

Ordered accordingly.

---

IN THE MATTER OF THE PETITION OF PATRICK F. CONWAY, RESPONDENT, *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK, APPELLANT.

*Chapter* 137 *of* 1870 — *Publication under* — *Street assessments.*

Chapter 137 of the Laws of 1870, does not require that a resolution for the repavement of a street in the city of New York, should be published in more than one newspaper.

APPEAL from an order setting aside and vacating assessments made on the land of the petitioner for the expense of paving Thirty-second street with trap-block pavement, between Second avenue and the East river, in the city of New York.

*Wm. Barnes,* for the appellant.

*James A. Deering,* for the respondent.

* Harris v. Fly, 7 Paige, 421.
† Glen v. Fisher, 6 J. Ch., 33 ; Birdsall v. Hewlett, *supra.*

DANIELS, J.:

The proofs produced upon the hearing of the petitioner's application, showed that a previous pavement had been laid upon Thirty-second street, for which his property had been assessed, and the assessment paid. And, as it was made to appear that the resolution providing for the repavement was not published in all the newspapers employed by the corporation before its final passage or adoption, as required by section 7, of chapter 446, of the Laws of 1857, the assessment, for that reason, was objected to as unlawful. The proof showed a failure to publish in the newspaper called "The Leader," and that, under the act of 1857, has been held to be a fatal defect in other proceedings of this nature.* But it is claimed, on the part of the appellant, that this principle is inapplicable to the present case, for the reason that the resolution for the pavement mentioned, was not finally passed or adopted until after chapter 137, of the Laws of 1870, went into effect, and that a single publication was sufficient to satisfy all that was required by that act. The proof showed that the resolution for the repavement was reported to the board of aldermen, on the 12th day of May, 1870, and passed on the twentieth of the same month; and that it was received by the board of assistant aldermen on the twenty-first, and adopted on the twenty-fourth of that month, while the act of 1870 was enacted and went into effect on the fifth day of April of that year, before the resolution was either voted upon or adopted by either of the boards. That act provided that it should be the duty of the clerks of the respective boards to publish all resolutions and ordinances and amendments thereof, which should be introduced or passed, except such as required secrecy, and that no vote "shall be taken in either board upon the passage of a resolution or an ordinance, which shall contemplate any specific improvement, or involve the sale, disposition or appropriation of public property, or the expenditure of public moneys or income therefrom, or lay any tax or assessment, until after such notice shall have been published at least three days; and whenever any vote shall be taken, such resolution or ordinance shall, before the same shall be sent to the other board, or to the mayor,

---

* Matter of Douglass, 46 N. Y., 42; Matter of Astor, 50 id., 363; Matter of Smith, 52 id., 526; and Matter of Phillips, reported in 2 Hun, 212, and decided in Court of Appeals, February 2, 1875.

and immediately after the adjournment of the board at which the same shall have been passed, be published with the yeas and nays, and with the names of the persons voting for and against the same, as part of the proceedings." *

At the time when the resolution in question was considered, this was the only existing law providing for its publication, for, by the last section of the act containing it, the preceding acts of 1830 and 1857, requiring the publication to be made in all the newspapers employed by the corporation, were expressly repealed. The first of those acts was passed on the 7th of April, 1830; the other on the 14th of April, 1857; and they were repealed by an express reference to those dates, as well as the titles by which they had been enacted.†

Another act was passed afterward, in the same month, having relation to the publication of proceedings ° in the cases of assessments, but it did not require them to be published, as the statutes which were repealed had, in all the papers employed by the corporation. It merely provided that all advertising for the city government, including street and assessment proceedings, should be done in not more than seven daily and six weekly newspapers, to be designated from time to time by the mayor and comptroller. ‡ The evident object of the enactment was, to have the papers provided, in which the advertising required by other laws and regulations could be done, without in any way attempting to define or describe what that might be. The advertising was to take place in newspapers from time to time to be designated; but nothing appeared, from which it could be supposed that any designation under this provision had been made when this resolution was before either of the boards that considered and passed it, or at any time since then.

When the resolution was voted upon, the proceedings of the boards acting on it were consequently regulated wholly by the act of April 5, 1870, which simply required publication of the proceedings, without stating that it was to be done. in all the newspapers employed by the corporation. The change made was both substantial and significant, indicating the existence of the intention to

* Vol. 1, Laws of 1870, 369, § 20. † Vol. 1, Laws of 1870, 396, § 120.
‡ Vol. 1, Laws of 1870, 882.

dispense with the strictness previously enjoined. The comprehensive term by which the regularity of the proceedings had been rendered dependent on a publication in all the newspapers, was omitted, and the substitution of an indefinite publication was made to take its place. The omission of that term in the present act, was so important as to be consistent with no other design than that of effecting a change in the law. And its existence is fully confirmed by the positive repeal of the laws by which the general requirement had been made.

The act of 1870 contains no declaration of the number of papers in which the publication shall be made, to constitute a compliance with its requirement. But whether it shall be in one, two or more newspapers, was not stated. All that was prescribed was, that there should be the designated publication of the resolution and proceedings, and that can be complied with by making it in one newspaper, as literally and substantially as though it were made in any greater number. In either case a publication would be made, and that is all that the act requires in order to satisfy its terms.

The system provided for by the preceding statutes was exceedingly strict and precise, rendering the proceedings invalid when an accidental omission to publish in one paper occurred, even though no want of notice resulted from it to the owner applying for the removal of the assessment, for the expense of the improvement, from his property. And it was probably for the purpose of removing this special restraint that the change was made, which the language of the act of 1870 indicated it to be the intention to make; no other design can be fairly imputed to its terms. It was obviously insufficient, therefore, to establish a failure to comply with this provision, to show an omission to publish the resolution in one of the four newspapers employed by the corporation for the publication of such proceedings. The act of 1870, which was enacted after the designation was made, did not require a publication in the newspapers previously employed for that purpose. It required only such a publication as its own terms prescribed, and making it in even a single newspaper was sufficient to perform what they declared should be done.

It appeared from the proof produced upon the hearing, that three other newspapers were, in 1868, employed for the publication of

such proceedings, besides the one in which it was shown that it had not been made. No other evidence of the omission to publish was given. And it may very well have been, consistently with this state of the evidence, that the proper publication was made in each one of the other three papers. It could not be reasonably inferred from the omission to publish in one, that the neglect of the prescribed duty had been general. The application made was predicated on the truth of a negative allegation. And it was the applicant's duty to give reasonable evidence of its truth, before he could be entitled to an adjudication in his favor.*.

The persons charged with the duty of making publication, were public officers, who, the law presumes, in the absence of evidence to the contrary, performed the obligation imposed upon them. Some proof that .they failed to do their duty was required, to overcome the presumption existing in their favor. The clerks of the respective boards were required to publish the resolution and proceedings, and· they cannot be held to have failed to do so, without some proof fairly warranting that conclusion; † and none was given, which could be rationally attended with that result.

When the resolution was voted upon, the proceedings of the boards, so far as publication was required, were regulated by the act of 1870, which required a mere publication only, and not that it should be made in all the newspapers employed by the corporation, as the preceding laws had designated. The proof given by the applicant failed .to show that this publication had not been made. For that purpose, the proof should have gone further. The omission relied upon could not be established by a simple failure to publish in The Leader.

The order appealed from should be reversed, with ten dollars costs besides disbursements, and the motion denied, with ten dollars costs.

DAVIS, P. J., and BRADY, J., concurred.

Ordered accordingly.

* 1 Greenleaf on Evidence (12th ed.), § 80. .

† Hartwell v. Root, 19 Johns., 345; People v. Carpenter, 24 N. Y., 86; Leland v. Cameron, 31 id., 115.