# The State *ex rel* Sanche *v.* Webb *et al.*

| 97 | 111 |
| 101 | 96 |
| 97 | 111 |
| 105 | 422 |
| 97 | 111 |
| 133 | 258 |

*Proceeding to vacate Charter and restrain Persons from acting as a Corporation.*

1. *Action to vacate charter of private corporation may be brought by any person without first obtaining order of judge.*—An action to vacate the charter of a private corporation may be brought by any person giving security for costs without first obtaining an order from a judge of the Circuit Court.

2. *Parties defendant when numerous may be represented by their chosen officers.*—When an action to vacate the charter of a private corpora-tion is brought against-the individuals who compose its governing body and who fairly represent the other stockholders, who are un-known and numerous, and some of whom are non-residents, a demur-rer on the ground that all the stockholders are not parties, should not be sustained.

3. *Associates of usurping officers not necessary parties.*—In such case if it is alleged that certain individuals together with their associates are usurping the powers of a corporation, the action is against the in-dividuals named, and they are the only parties defendants.

4. *Waiver of right to vacate charter by the State not implied when fraudulent acts are concealed.*—If the information charges that certain

[The State ex rel. Sanche v. Webb et al.]

fraudulent preliminary steps in the organization of the corporation have been concealed by the defendants from the State, its failure to proceed against them, will not be treated as an admission of or an acquiescence on the part of the State in their corporate existence.

5.  *Section 3170 of the Code directed against persons usurping powers of corporation.*—An action against individuals for fraudulent usurpation of the powers of a corporation is properly brought against them, and the corporation itself is not a proper party defendant.

·6.  *Corporate functions acquired by an evasive compliance is a fraud upon the law.*—When an information alleges that two or more persons formed a private corporation with a capital stock of a million dollars, which was paid for by transferring to the corporation, the possibility of obtaining a patent, such allegations if true, do not show a compliance with the laws regulating the organization of corporations, and the informant is entitled to the judgment authorized by the statute.

·APPEAL from Jefferson Circuit Court.

Tried before Hon. JAMES B. HEAD.

This was an information filed by the State on the relation of Hercules Sanche against A. N. Webb and others to restrain them from acting as a corporation. This appeal is taken from the action of the court sustaining a demurrer to the complaint, the grounds of which demurrer are as follows:  (1) "The Electro Libration Company, as a corporation, is not made a party; (2) all the stockholders are not made parties defendant; (3) it is sought to make other interested parties defendants by merely describing them as associates; (4) it is not averred that any Circuit Court judge directed the action to be brought, nor is it shown that the plaintiff has obtained the consent or leave of the Circuit Court to institute the present proceeding; (5) the complaint shows that the State of Alabama has waived its right to the relief sought."

CABANISS & WEAKLEY, and CHARLES A. SENN, for appellant, filed extensive briefs, citing many authorities, the most pertinent of which are referred to in the opinion of the court.

WEBB & TILLMAN, for appellees, insisted that the corporation was a proper party defendant, citing *State v. Taylor,* 25 Ohio St. 282: *Commonwealth v. Turnpike Co.* 5 Cush. 51; 2 Morawetz 769; High Ex. Rem. 661; 2 Beach on Corp. 840.

HARALSON, J.—The attempt to incorporate the company, the validity of whose charter is questioned in this case, in that the defendants are charged with having usurped the franchise of being a corporation, proceeded under §§ 1803-
Vol. 97.

[The State ex rel. Sanche v. Webb et al.]

1807 of the Code of 1876, as amended by Acts of 1882-3 p. p. 5 and 40.

In these statutes, it is provided, that two or more persons, desiring to form themselves into a private corporation, for carrying on any manufacturing, mining, immigration or industrial business in this State, may file in the probate court of the county, in which it is proposed that the company shall have its principal place of business, a written declaration, signed by them, setting forth, the names and residences of the petitioners, the name of the proposed corporation, the amount of the capital stock, and the number of shares into which it is to be divided, and other matters as prescribed in § 1803.

Thereupon, the probate judge must issue a commission to the petitioners, or to any two or more of them, to open books of subscription and proceed with the business of procuring the subscription of the capital stock, as provided in § 1804.

All subscriptions are required to be made payable in money, or in labor or property, at its money value.—§ 1805. Section 1806 provides, that when not less than fifty per cent. of the proposed capital stock has been subscribed, by *bona fide* subscribers, the board of corporators shall call the subscribers together, and they shall proceed to organize the corporation, by electing from themselves, a board of directors of not less than *three* nor more than *nine* members, who, in turn, shall elect from this number, a president, and secretary.

It is then provided, in section 1807, as amended, that upon the completion of the organization, and the payment to the treasurer of the company, or to some officer designated for that purpose, in cash, at least twenty per cent. of the capital subscribed, payable in money, and the payment of the remainder of the capital so subscribed for, payable in money, being secured to be paid, . . . . . . . . . . . . . and also the delivery to such officers of at least twenty per cent. of the property subscribed, . . . . the board of corporators shall, in writing, over their own signatures, certify the same to the judge of probate, who shall issue to them a certificate, that they have been fully organized according to law, under the name and for the purposes indicated in their written declaration, and are fully authorized to commence business under their charter.

The Code of 1886, provides, that, "an action may be brought in the name of the State, on the information of any person, for the purpose of vacating the charter or annulling

8-97

the existence of any corporation, other than municipal," for *five* causes specified in § 3167.

And, again, that "an action may be brought in the name of the State against the party offending, in the following cases,"—naming three causes of offense, the third and last of which is, "when any association, or number of persons, act within this State as a corporation, without being duly incorporated," § 3170.

Under either of these sections,—to annul a charter, or to exclude persons from exercising corporate franchises, when they have not been duly incorporated,—the judge of the Circuit Court may order the action brought,—under § 3167, whenever he has reason to believe that any one of the acts or omissions, specified in that section, can be proved, and it is necessary for the public good; or, under § 3170, when he believes that any one of the acts specified in that section can be proved, and it is necessary for the public good; or, under either one of them, for the causes specified in them, "an action may be brought on the information of any person giving security for the costs of the action, to be approved by the clerk," the provision being the same in both sections, for the action by private persons, §§ 3168 and 3171.

The information in this case was filed without the direction of the judge of the Circuit Court, and was instituted by Hercules Sanche, in the name of the State, on his relation, having given security for costs, approved by the clerk of the Circuit Court. It charged, in substance, that the defendants, and their associates were acting, and claimed to act, as a corporation, under the name of *The Electro Libration Company*, by virtue of certain proceedings in the probate office of Jefferson county, described in the information, which were had and taken under the provisions of the Code of 1876, first above referred to, for the purpose of incorporating said company, but which are alleged to have been merely colorable, and abortive because :—1st, Notwithstanding the report of the commissioners, that 10,000 shares, of $100 each, of the capital stock of the company had been duly, and regularly and in good faith subscribed for, and that the subscribers had paid the entire subscription of $1,000,000, to the capital stock of said corporation, paid by causing to be conveyed to it, the property which they had subscribed for said stock, yet, as a matter of fact, not 50 *per cent.* of the proposed capital stock of $1,000,000, nor any appreciable part thereof, had been subscribed by *bona fide* subscribers, nor had the subscribers agreed to pay money, or money's worth on account of their said subscriptions, nor was it

understood or intended, that they should pay or transfer to the company, money or labor or property at its actual value, in payment of the subscriptions, but, the promoters and organizers of said proposed corporation entered into a scheme, in violation of the statutes, under which they purported to organize, whereas, in point of fact, the subscribers undertook to transfer and did transfer, to said company, in full payment of their subscription of $1,000,000, only the possiblity of obtaining a patent, which possibility had no commercial value whatever, and for which they had agreed to pay only $10,000, of which, only $5,000 had then been paid, no patent having been obtained.   (2.) It is averred, that not twenty *per cent.* of the capital stock of said corporation, which section 1806 of Code, as amended, required should be paid, nor any appreciable sum of that amount, had, at the time of making said report, or has ever been paid in cash, to the treasurer of said pretended corporation, nor to any officer designated for that purpose, nor was it ever intended or understood that it should be paid, in the equivalent of cash, nor in property of the value of 20 *per cent.* nor in labor of that value, but said stock was fictitiously issued.

The prayer of the petition followed § 3178 of the Code, that the defendants, who were the so-called directors of said pretended corporation, residing in Alabama, and their associates.be excluded and ousted from the said franchise of acting as a corporation, and pay the costs of the proceeding.

The defendants demurred to the information, assigning numerous grounds.   One of these grounds was, that the said Electro Libration Co., had not been made a party to the suit. The court sustained the demurrer on this ground,—as it would seem from the opinion on file,—giving the plaintiff the privilege of amending, which he declined to do, and judgment was rendered on the demurrer, in favor of defendants.   Let us consider these several grounds of demurrer.

1.   It was unnecessary for the plaintiff, as is urged as ground for demurrer, to obtain the direction of the circuit judge, before the institution of this suit, whether it be held to have been brought under § 3167, or § 3170 of the Code. Under either, the judge may direct the bringing of an action, or, it may be brought on the information of any person, by his giving security for the costs of the action.   The judge acts independently of any person, in directing an action under either section, and any person who desires to bring an action under either, may do so, without consulting the judge, and getting his direction.   The statute is so plain to

this effect, as to defy argument to make it plainer.—*Chesshire v. Harper*, 116 Ill. 493.

2. It is objected that the information shows, that there are other stockholders, besides the defendants, who are not, and who ought to have been made parties defendant.

But this ground is not well taken, since when the parties are very numerous, or there are many in the same interest who can not be easily ascertained; or where the question is one of common interest, and one or more may sue or defend for the whole; or where the parties form a voluntary association, and those made defendants may be fairly presumed to represent the interests of all, the action may proceed against any number, in such cases, less than the whole. This information alleges, that the defendant's associates are too numerous to be brought upon the record, some are unknown and the remainder are non-residents. It would seem that the defendants, the chosen officers and directors of the alleged corporation, its governing body, would fairly represent the other stockholders.—*Story's Eq. Pl.* §§ 97, 99; *Ewing v. The State*, 33 *A. & E. C. Law Cases*, 684; *The People v. Carpenter*, 24 N. Y. 86; *Chesshire v. Harper*, 116 Ill. *supra*.

3. The objection, that the plaintiff seeks to make others parties defendant, by describing them as associates, without giving their names, or otherwise designating them, is predicated on an erroneous assumption, that plaintiff seeks to make the persons referred to, parties defendant. The allegation is, that the defendants, "together with their associates, in what is called the Electro Libration Co., · · · · are usurping the privilege and franchise of being a corporation." The information is against individuals, who are charged with usurping a franchise to be a corporation, and they are the only parties, made or sought to be made defendants.

4. There was no waiver on the part of the State of its right to bring this suit as is charged. The demurrer fails to point out in what the waiver consists, and no fact is stated in the information, which would amount to waiver, by acquiescence or otherwise. If the fraudulent acts of the defendants, as disclosed in the information be true, they can acquire no advantage which their own alleged fraudulent conduct enables them to set up. The action on the part of the State, in not having instituted legal proceedings against them, heretofore, superinduced by the fraudulent representations and concealments of the real facts by defendants, will not be treated as an admission of, or acquiescence, on the part of the State in, their claim to corporate existence.

5.   It was objected, again, that the information showed that this action was under § 3167 of the Code, which authorizes an action to vacate a charter or to annul the existence of any corporation, other than municipal, and there is no averment of any of those causes for which this may be done.   But this ground of objection has no foundation, since the information shows plainly enough on its face, that it is brought under section 3170 of the Code.   To bring an action under the first named of these sections, the proceedings would necessarily be against the corporation, admitting its existence; but, the plaintiff in this action, nowhere admits that said company ever had corporate existence, but the burden of his complaint is, that it has no such existence, and defendants, in claiming such a right for it, are mere usurpers of corporate franchises, from which they ought to be excluded.   The attorney for defendants, seem to admit that the action is under § 3170.

6.   It now becomes pertinent to inquire, if the proceedings had in the probate court, gave this company corporate life, and in doing so, we will make reference to the adjudged cases on the subject, as the best exposition we can give.

The case of *The Jersey City Gas Co. v. Dwight*, 29 N. J. Eq. R. 242, is in many respects like the one we consider. The defendants, thirteen in number, claimed to have acquired corporate existence, under a general statute authorizing the formation of gas companies, which provided that thirteen persons may become a corporation on complying with certain prerequisites prescribed by it, similar in many respects to the statute under which these defendants sought incorporation, one of which requirements, was the subscription of at least one-half of the entire capital stock, and the payment of twenty *per cent.* thereon in cash.   The court say:   "The complainants deny the corporate existence of the defendants.   They allege the defendants are not a corporation, and never have been.   It is admitted, they filed articles of association and an affidavit, showing an ostensible compliance with the statute, but their compliance is charged to have been vicious and fraudulent.   The complainants say, that one-half of the capital stock of the projected corporation was not actually subscribed, and that twenty *per centum* was not paid in cash by each subscriber, on his subscription, before the articles were filed, but that some of the subscriptions were entirely fictitious.   ·   ·   ·
·   ·   Upon the facts admitted, I do not think that this subscription can be regarded as coming up to the standard prescribed by the statute.   ·   ·   ·   It is designed to pre-

vent persons, without means and of doubtful integrity, launching great corporate enterprises, wholly at the risk of others, solely to get remunerative positions or a chance to speculate on the capital of others. · · · Any attempt to acquire corporate functions by a pretentious or evasive compliance, no matter what the papers may say on their face, must be denounced as a fraud upon the law. By this law, a corporation is made self–creative, and a grant of a franchise is made to flow from the act of the grantee; the act is the grant, but to have this effect, it must be what the law requires, and not a sham. · · · My conclusion is, that it is clearly shown, the defendants have attempted to acquire corporate life and power by a feigned compliance with the law, and their effort must therefore be adjudged abortive.

In *Peterson v. Arnold*, 45 Penn. 410, the supreme court of Pennsylvania held, that when a company is incorporated by act of assembly, the charter is conclusive evidence of its validity, but when the act or organization is under the general manufacturing law, the charter though binding on its members, covers no fraud that may have been used in forming it; that the omission of stockholders to pay their stock as required by law, is a violation of the law by which the charter was procured, and it is no shield against creditors.

The Indiana court, on appeal, in an action of *quo warranto*, brought. under a statute similar to ours, against individuals, challenging their right to act as a railroad corporation, attempted to be organized under the general law, say: "Merely simulated subscriptions, made by persons who are neither actually nor apparently able to pay the amount subscribed, can not answer the purpose of the statute · · · They are an attempt to acquire corporate functions, not by compliance with law, but by a disingenuous evasion of it." *Holeman v. The State*, 5 N. E. Rep. (Ind.) 702.

· Our own court, in line with these decisions, in an adjudication on a similar incorporation statute, held, that the conditions to organization, as laid down in the statute, are prerequisite to rightful, lawful organization, and that it is only when these things are done, that the subscribers become a body corporate, with the powers conferred by the laws on private corporations. *Cen. Ag. & Mech. Ass. v. Ala. Gold Life Ins. Co.*, 70 Ala. 131; *Sparks v. Woodstock Iron Co.*, 87 Ala. 294.

Section 6 of Art. XIV of the constitution of the State provides, "That no corporation shall issue stock or bonds, except for money, labor done, or money or property actually

received, and all fictitious increase of stock or indebtedness shall be void."

In construing this clause of the Constitution we held, that one purpose was, to protect the public, as well as stockholders, against spurious and worthless stock, by the process of watering,—in other words, from fraudulent issuing and putting on the market, fictitious corporate stock, which is based on nothing valuable, as a consideration for its issue. —*Williams v. Evans*, 87 Ala. 725.

7.   Was the company claiming to be a corporation, a necessary party to this proceeding?   The language of the demurrer is, "said corporation, as a body corporate, is not made a party defendant to said suit."

The learned counsel for the defendants, admits in argument, that in such a proceeding as this, the corporation itself and the individuals, can not be joined as defendants; that when the action is under § 3170 of the Code, as this one is, it must be against the parties offending, and not against them and the corporation jointly, and when the individuals simply act as agents of the corporation *de facto*,—formally, if not legally organized,—the action must be against the corporation alone, or, in other words, if there has been an attempt at organization, under the statute, however imperfect and fruitless the result, the forms of the law having been complied with, the action must be against the pseudo corporation; but if there has been a naked usurpation of a franchise to be a corporation, without any pretext at organization, then, and only then, must the action be against the individual usurpers.

In our research, aided by the industry of counsel, we have found but one case which seems to support this suggestion of defendant's counsel,—that of *The People v. Flint*, 64 Cal. 49 ; which is weakened, if not destroyed by the later case in the same court, of *The People v. Stanford*, 77 Cal. 360, where the proceeding was against the railroad corporation, as one of the defendants, with others, alleging that the individuals named as defendants, and the railroad company, were falsely claiming that there was such a corporation, and that they have unlawfully held and exercised and claimed the right to exercise divers powers, &c.   The court say, that the proceeding is an anomaly, that a corporation can not be sued as such, and brought into court, and the action maintained against it, on the ground that it is not a corporation.   If it is intended to draw in question the franchises of the corporation, the proceedings must be against the individuals who usurp the franchise.   If it is claimed that the corporation is

[The State ex rel. Sanche v. Webb et al.]

usurping privileges and powers not belonging to it, the corporation is the proper and only party.

In Indiana, they have a statute similar to ours, authorizing an action against any association or number of persons acting within the State as a corporation, without being legally incorporated. The only difference between their statute and ours is, that ours uses the word "duly," instead of "legally" incorporated, and theirs also provides, like ours, for an action against the corporation, for forfeiture of its charter, for acts which amount to a forfeiture or surrender.

In construing this statute, the Supreme Court of that State, held, that an information against a corporation in its corporate name, charging that it has not been legally organized, and pointing out certain defects in its organization, and praying a dissolution of its franchises, was bad, rot being against the individuals claiming to be a corporation, and holding that it could not be brought into court, as a corporation, to answer an allegation, that it is not and never was a corporation, and that, when a corporation is brought into court in its corporate name, its existence as such is admitted.—*The Mud Creek Draining Co. v. The State*, 43 Ind. 236.

In the State of New York, an action is authorized as here, "When any association or number of persons shall act within this State as a corporation without being legally incorporated." Ours is a transcript of their law, substituting the word "duly" for "legally." In a *quo warranto* proceeding, calling on a railroad company, organized under general statute, to show by what warrant it used certain franchises alleged to have been usurped, the court say, "If the information in this case had for its object to oust the defendants from acting as a corporation, and to test the fact of their incorporation, it should have been filed against the *individuals*; if the object was to effect a *dissolution* of the corporation, which had had an actual existence, or to oust such corporation of some franchises, which it unlawfully exercised, then the information is correctly filed against the corporation. ˙ · · · When, therefore, an information is filed against a corporation, the existence of the corporation is admitted." —*The People v. Saratoga & R. R. R. Co.*, 15 Wend. 114.

In Ohio, they have statutes similar to ours, authorizing actions against corporations, for violations of charters, misuser or forfeiture of franchise, and against any association of persons who act as a corporation without being legally incorporated; and in a proceeding against a company by its corporate name, charging a usurpation of certain corporate franchises, the Supreme Court of that State held, that when

[The State ex rel. Sanche v. Webb et al.]

the franchise to be a corporation is drawn in question, the proceedings under the statute should be against the individuals who usurp such franchise, or who assume to act as a corporation, saying; "We are aware of no case in this country, in which a body, sued as a corporation, has been ousted of a franchise to be a corporation, on the ground that it never had a legal, corporate existence, and in England, the only case appears to be that of *Rex v. Chester*, (2 Term 565,) and it was a municipal and not a trading corporation. But, on principle, it seems to be irregular that judgment should be asked against a defendant, whose very existence the plaintiff denies."—*The State v. The Cin. Gas Lt. Co.*, 18 Ohio, 262.

In the Indiana case already referred to, *Holman v. State*, 5 N. E. Rep. *supra.*, the court held, that the information was rightly exhibited against the individuals named as defendants, requiring them to show by what authority they assumed to act as a corporation, and that, in such a proceeding, it might be shown the subscriptions were fraudulent and never made in good faith, and if the action was against the corporation, no such enquiry would be allowed.

In *Chesshire v. The People*, 116 Ill. 493, which was an information against individuals assuming to act as directors of a corporation, whose legal existence was denied in the information, the court held, that it would be impossible to make the corporation a party. The only persons, if that hypothesis be true, to be brought before the court, to test the validity of the organization of the district, are those assuming to act in the capacity of directors.

In line with the foregoing are the following decisions:— *The People v. Weber*, 129 Ill. 169; *The State v. Barron*, 57 N. H. 498; *The People v. Carpenter*, 24 N. Y. 86; *The State v. Coffee*, 59 Mo. 59; *The State v. Com. Bank*, 33 Miss. 474.

The text books maintain the same doctrine.—*High on Extraordinary Remedies*, § 661, is as follows: "Some conflict of authority has existed in this country, as to the effect of instituting proceedings against a corporation *eo nomine*. But the weight of authority may be now regarded as sustaining the proposition, that the effect of filing an information against a corporation by its corporate name, to procure a forfeiture of its charter, or to compel it to disclose by what authority it exercises its corporate franchise, is to admit the existence of the corporation. Its corporate existence can not be afterwards controverted."—*1 Dillon on Corp.* § 892; *Angel & A. on Corp.* § 756; *Boon on Corp.* § 165.

8. It can make no difference in a proceeding of this character, whether the corporation is one *de jure* or *de facto*, as

[East Tenn., Va. & Ga. R'y Co. v. Turvaville.]

to the results of the trial. In either case, the governing power, the directors, would defend. If it be ascertained, that the company has corporate existence, the action fails, and if it be found that the defendants act without being duly incorporated, a judgment of exclusion from the usurped franchise will be rendered, and the creditors and stockholders, in such case, have ample remedies in the courts for their protection.

And so, if the action is under § 3167, against the company only, for the purpose of vacating its charter or annulling its corporate existence, and the judgment is against the corporation, as in the case of a judgment against individual usurpers of a franchise, the Circuit Court would not be competent to wind up its affairs, and the creditors and stockholders would seek remedies in other actions.—*State v. Atchison & N. R. R. Co.*, 24 Neb. 143; *Society Perun v. Cleveland*, 43 Ohio St. 481; s. c. 12 A. & E. Corp. Cas. 40.

It can not be doubted, after what has been said, that the allegations of the complaint in this case, if true, are sufficient to entitle the plaintiff to his judgment as authorized by the statute, and that the demurrer to the information ought to have been overruled.

Reversed and remanded.