# Capital City Water Co. v. The State ex rel. Macdonald.

*Proceedings in the Nature of Quo Warranto.*

1. *Quo warranto proceeding; not necessary to be commenced by summons and complaint.*—A proceeding in the nature of a *quo warranto* under the statute (Code, §§ 3167-3183), for the dissolution of a corporation, is not a "civil action," within the meaning of the statute (Code, §§ 2651-2652), which provides that all civil actions in courts of record, except as otherwise provided, must be commenced by a service of summons; and it is not necessary for a *quo warranto* proceeding to be commenced by summons and complaint.

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

2. *Same; not necessary for relator to obtain order of court.*—In order to institute and prosecute a proceeding in the nature of *quo warranto* under the statute (Code, § 3167), for the purpose of vacating the charter of a private corporation and dissolving such corporation, it is not necessary that the relator should obtain the permission or an order from any court; but such proceeding may be brought on the information of any person, giving security for the costs of the action.

3. *Same; relator must give security for costs; waiver of this requirement.*—Upon the institution by a private person of a proceeding in the nature of *quo warranto* under the statute (Code, §§ 3167, 3168), to dissolve a private corporation, the relator must give security for the costs of the proceeding, and if such security is not given before the commencement of the suit it can not be afterwards supplied, if seasonable objection be made; but if the respondent appears and pleads, or otherwise enters into a defense, without moving with promptness to dismiss the proceeding for the want of security for costs, he waives the objection, which can not subsequently be interposed.

4. *Same; same; waiver of failure to give security for costs.*—Where a proceeding, under the statute, (Code, §§ 3167, 3168), in the nature of *quo warranto* to dissolve a private corporation is begun on the relation of a private person on April 27, 1892, and the relator gave security for the costs of the proceeding on May 2, 1892, which was approved and accepted by the clerk of the court in which the proceeding was instituted, and the respondent filed demurrers and motion to quash, without raising the objection of the failure of the relator to give security for costs before the commencement of the proceeding, and when the cause came on for hearing in February, 1894, this objection was for the first time interposed by a motion to dismiss the proceeding on the ground of such failure, the motion was properly overruled; the respondent having waived the right to raise such objection.

5. *Same; insolvency of security for costs; when relator not required to give additional security.*—The fact that the tax records of the county in which a person lives show that he has only $320 of taxable property, does not show that such person is insolvent; and in a proceeding in the nature of *quo warranto* to dissolve a corporation the relator should not be required to give additional security for costs on the ground that the security already given is insolvent, when the evidence in support of the motion to require additional security only shows that according to the tax records of the county in which such security resides he had only $320 of taxable property in said county.

6. *Water company; breach of charter duties.*—Where, under the charter of a water company, it is its duty "to supply a city and its inhabitants with pure, wholesome and deep well water, suitable for all domestic and all manufacturing purposes, and sufficient in quantity for all uses of said city and its inhabitants," which duty is set forth and provided for in an ordinance-contract ordained by the city council of said city, granting to the water company a franchise to construct and maintain water-mains, pipes, acqueducts and other fixtures pertain-

ing to supplying water to the city and its inhabitants, said water company must supply pure, wholesome and deep well water, and of adequate quantity to the city and its inhabitants at all times, and a failure in respect of the quality of the water to be supplied, or as to its quantity, or as to the constancy of the supply is a breach of the corporation's charter duties; and a failure to constantly furnish water of the prescribed quality is an offense against the act creating the water company, which, under clause one of section 3167 of the Code of 1886, warrants the vacating of the charter and the dissolving of the corporation, unless justification or excuse for such failure, on the particular facts under which it occurred, can be found in the charter of the corporation.

7. *Same; quo warranto proceedings; what necessary for pleas to aver as a defense.*—In a proceeding in the nature of *quo warranto* to vacate the charter of a water company and to dissolve the corporation, because of the breach of charter duties in failing to supply the city and its inhabitants at all times with pure, wholesome and deep well water, in quantities sufficient for their uses, the pleas of the respondent, in order to present a defense, must either negative the charge of failure made by the petition and recited in the writ; or, without such negation, present facts which excuse or justify such failure, so as to strip it of the essentials of an offense against the charter of the respondent company; or, failing in this, the pleas must present a cause which addresses itself to the discretion of the court, and which requires an exercise of that discretion in the respondent's favor.

8. *Same; same; insufficient pleas.*—In such a proceeding it was averred in the petition or complaint that notwithstanding the imperative duty imposed by the charter of the water company and the ordinance-contract, the respondent had for two or three years just preceding the institution of the suit failed and refused to supply said city and its inhabitants with pure, wholesome and deep well water, and thereby misused and abused its corporate duties and franchises. The pleas of the respondent averred that for five years from the completion of its work it had supplied the city and its inhabitants with pure, wholesome and deep well water in sufficient quantities as required by its charter and an ordinance-contract between the city and the company but that under the terms of the said ordinance-contract, the city, at the expiration of said five years, had the right to elect to purchase said water works, and did elect to make said purchase and notified the respondent of said election; that pending the dispute between the city and the respondent as to the price the former should pay for the water works, the latter was in possession and control of its works, but failed to increase the supply of pure, wholesome and deep well water to meet the wants of the city and the requirements of the company's charter, by reason of the fact of the city's election to purchase the water works, which would not justify the company in adding to the costs of the works to the city; that the price could not be agreed upon, and the sale was not made; that during this time

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

there were four periods, the length of which were not mentioned, in which impure river water was furnished the city, which was absolutely necessary by reason of protracted drouths which caused the respondent's artesian wells to fail to supply the usual amount of water; that if the respondent's charter was forfeited it would have no right to supply either the city or its inhabitants with water, or to operate its works in any way, and this would result in irreparable injury, and in probable devastation and ruin to the city and its inhabitants. . *Held:*

(1.) That such pleas did not negative the charge of failure made by the petition and recited in the writ, but admitted that the respondent did not, at all times, supply the city and its inhabitants with a sufficient quantity of pure, wholesome and deep well water.

(2.) That said pleas did not present facts which excuse or justify such failure, so as to strip it of the essentials of an offense against the charter of the respondent company.

(3.) That under the petition and pleas there is not presented a cause which addresses itself to the discretion of the court, and which requires an exercise of that discretion in respondent's favor.

9. *Same; same; same.*—In such a proceeding, a plea which avers that the respondent has, at all times, fully performed all of the duties imposed by the ordinance-contract between it and the city and arising out of its charter, "by providing a system of water works with sufficient capacity and power to furnish the city an abundant supply of pure, wholesome, deep well water, sufficient for all the purposes of the city and its inhabitants," and further avers "that each and every assignment of breach in this respect as set forth in plaintiff's alternative writ heretofore served upon this defendant are wholly untrue," is not a denial of the charge that the respondent company has failed to supply the city and its inhabitants with pure, wholesome and deep well water, and such plea does not present the general issue upon said charge; the plea averring only that it has a system of works capable of supplying water according to the charter, but does not aver that it has, in fact, supplied water of the requisite quality and quantity to the city and its inhabitants at all times

10. *Water company; right of city to rescind ordinance granting franchise does not defeat the right to dissolve corporation for breach of charter duties.*—The fact that the city has, under an ordinance-contract with a water company, which is chartered by the State, the right, on the breach of the contract, to rescind the ordinance granting the franchise to the company, does not defeat the right which the State has to vacate the charter of said company and dissolve the corporation, because of the breach of charter duties, or the abuse or misuse of its charter privileges.

11. *Same; the performance of charter duties after breach thereof ineffectual to prevent forfeiture.*—The fact that after the franchise of a corporation has been sufficiently abused to authorize and require the forfeiture of its corporate existence, and after the proceedings for forfeiture have commenced and been pending for a year, the respond-

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

ent then commences to exert itself to meet the requirements of its charter, and promises to continue its efforts unremittingly until the duties and obligations imposed upon it by its charter are complied with, can exert no influence by way of curing the abuse already committed, or of absolving the corporation from responsibility for an offense against its charter which has already been committed, and constitutes no legal ground for refusing to vacate the charter and dissolve the corporation.

APPEAL from the City Court of Montgomery.

Heard before the Hon. THOMAS M. ARRINGTON.

This was a proceeding in the nature of *quo warranto*, instituted by the appellee, The State on the relation of Gordon Macdonald, to vacate and annul the charter of the appellant, the Capital City Water Company. The averments of the petition or complaint, and the prayer thereof are sufficiently stated in the opinion. The respondent demurred to the complaint and moved to quash the writ issued thereon on the following grounds : "(1.) Because said suit was not commenced by a summons and complaint as required by law. (2.) Because leave of the court was not first had before the filing of the information in said cause. (3.) Because the said information was permitted to be filed without any affidavits being required to support the same. (4.) Because the relator is not shown to have any such interest in the subject matter as authorized him to institute or maintain this action. (5.) Because, under the facts stated in the alternative writ or complaint, the relator is not authorized to maintain this action." Both the demurrers and the motion to quash were overruled by the court, to which rulings the respondent separately excepted. Thereupon the respondent filed six pleas, the third one being afterwards withdrawn.

In defendant's first plea to the petition, after averring the fact of its being chartered in November, 1885, and completing the system of water works as provided in its charter and the ordinance of the city of Montgomery granting its franchise, it was averred that upon the completion of its system of water works it "at once commenced to supply the city of Montgomery and its inhabitants, with clear, wholesome and deep well water, suitable for all domestic and ordinary manufacturing purposes, and sufficient in quantity for all uses of the said city and its inhabitants," as required under its charter

and the ordinance-contract with tho city; "that it has continued from time to time to enlarge its works and increase its water supply as the wants of the city and the inhabitants of Montgomery demanded according to the law, and the spirit of its charter; and has at all times carried out the purposes for which it was incorporated;" that, under the terms of the ordinance-contract, at each recurring five years from the date of the passage of the ordinance, the city of Montgomery could, if it so desired, purchase the said water works, by complying with the provisions of said ordinance; that at the end of the first five years the city council of Montgomery, as it was authorized to do under said contract, elected to purchase said water works, and notified defendant of said election; that there were appointed, as directed by said ordinance, arbitrators to determine upon the price of said water works, but said arbitrators did not act; "that notwithstanding such failure on the part of the arbitrators, and notwithstanding the fact that no price has ever been fixed for said works, according to the provisions of said contract, the city council of Montgomery still asserts its rights to purchase said works under its election. And defendant further avers that prior to the election to purchase, on, to-wit, the 28th day of August, 1890, defendant by a resolution of its board of directors, determined to increase its water supply, and authorized its treasurer to at once obtain an estimate of the cost of sinking one or more artesian wells of sufficient capacity to give the needed supply to meet the increased wants of the city of Montgomery and its inhabitants; and defendant avers that it did at once secure experts to come to Montgomery for the purpose of having bored one or more wells according to the terms of said resolution, but before completing its negotiations with said experts, the city council of Montgomery made its said election to purchase its said works; and defendant avers that it was advised, and it so states, that it was not authorized to further increase the value of the said works after the election to purchase the same by the city council of Montgomery; and that it has not increased its water supply since said election, owing entirely to the fact of the election of the said city council of Montgomery to purchase its said works, and its failure to withdraw its said election, and owing to the fact that it is still insisting upon its right to purchase

said works on said election of purchase,   *   *   *   but that said question of purchase and sale is yet undetermined.   And defendant further avers that it only awaits the determination of this question, when, if its said works are not purchased by the city, it will sink a sufficient number of deep wells to furnish all the pure, wholesome and deep well water that will be needed to supply all the wants of the city of Montgomery and its inhabitants.   And defendant further avers that the city and the inhabitants of Montgomery are entirely dependent upon the defendant for a supply of water for fire and sanitary purposes, and that if its said charter should be taken away from it at this time, the city will be left without any supply of water for fire or sanitary purposes. And defendant further avers that many of the inhabitants of the city of Montgomery are now depending solely upon the defendant for their water supply, and that they are now, and have been at all times since the construction of defendant's works, furnished with an abundant supply of pure, wholesome and deep well water, and sufficient in quantity and quality for all the wants of the city and its inhabitants ; and defendant avers that if its said charter was forfeited, it would have no right to supply either the city of Montgomery or its inhabitants with water, or to operate its works in any way, and it would result in irreparable injury, and with probable devastation and ruin to the city and inhabitants.   And defendant avers that by section twenty-two (22) of said contract it is provided that 'this ordinance may be repealed or rescinded on ninety days notice in writing to them, if at any time the works herein provided for to be constructed *   *   shall in any substantial or material particular fail to meet the requirements of this contract, unless within said ninety days said works, in such substantial or material particular, shall have been able to conform to the provisions of this contract.'   And defendant avers that the said city council of Montgomery has, at no time, undertaken to repeal or rescind said ordinance, or given the defendant ninety days notice in writing of its intention to do so.''

In the second plea, the defendant averred its incorporation and set out the purposes for which it was incorporated as declared in the declaration filed, and the granting of its franchises to it by the city council of Montgom-

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

ery, and the making of the ordinance-contract with it for supplying the city and its inhabitants with pure, wholesome and deep well water ; that under the provision of this ordinance-contract the city council had the right, as averred in the first plea, to repeal or rescind said ordinance, and had taken no steps to effect the repeal thereof, and had not given it the ninety days notice, as provided therein ; and then further averred "that it is now furnishing to thé city of Montgomery all the water used, or that is needed for fire and sanitary purposes, and that there is no other means of supplying the city with water for fire or sanitary purposes except through the works of this defendant. And the defendant further avers that a large number of inhabitants of the city of Montgomery are now dependent solely upon the defendant for their water supply, and that there is no other means of supplying such inhabitants with water except through the works of defendant. And defendant avers that the public have a plain, complete and adequate remedy for any just complaints against this defendant by a repeal of the said ordinance, wherefore, it says that this action ought not to be maintained against it."

In the fourth plea, the defendant averred its incorporation, and the granting to it of the franchises by the city council of Montgomery, as alleged in the first and second pleas ; and further averred that after the completion of its works, they were accepted by the city council of Montgomery as a compliance with said contract ; that it bored four artesian wells for the purpose of getting a sufficient supply of water, and then purchased from the Montgomery Water Works additional wells, which were connected with its works ; that it afterwards contracted with an expert borer to bore it a well, at great expense to defendant, which was "contracted for by it for the purpose of being able to meet any possible demands upon it from time to time for pure, wholesome, deep well water," as provided for in the ordinance-contract. Defendant further averred "that it has at all times, since the construction of its works, been able to supply and has supplied the city of Montgomery and its inhabitants with an abundant supply of pure, wholesome, deep well water, sufficient in quantity and quality for all the uses of the city of Montgomery and its inhabitants, except on a few occasions, when, after a long protracted drouth, defend-

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

ant's wells failed to supply the usual quantity of water, and defendant was compelled for a few days on each of such occasions, to obtain part of its supply of water from the Alabama river; and defendant avers that such drouth and such failure on the part of its wells to supply the usual amount of water was entirely without any fault or neglect on its part, and that the same was unavoidable." This plea then set out the provision of the ordinance which reserved to the city council of Montgomery the right to repeal or rescind the said ordinance, and averred that the city council had never taken any steps to repeal or rescind said ordinance-contract, and had never given defendant any ninety days written notice of such intention on its part.

In its fifth plea the defendant averred "that it has from the beginning until now complied in all respects with all the terms and conditions of its said contract, and has faithfully performed all its duties arising out of its said charter by providing a system of water works of sufficient capacity and power to furnish the city of Montgomery an abundant supply of pure, wholesome, deep well water, sufficient for all the purposes of the city and its inhabitants. And it avers that each and every assignment of breach of duty in this respect, as set forth in plaintiff's alternative writ, heretofore served on this defendant, are wholly untrue."

In its sixth plea, the defendant averred, as in the first, second and fourth pleas, its incorporation, the declared purposes of its creation, the granting of franchises to it by the ordinance-contract adopted by the city council of Montgomery, the right given to the city council, under said contract, to repeal or rescind said ordinance-contract, the right reserved by the city council to purchase its works, its election to purchase, which prevented the defendant from boring additional wells, the approval by the city council of its system as constructed; and then further averred "that it has at no time willfully failed or refused to comply with the provisions of its charter, or of the said ordinance contract, but that it has at all times, in good faith, attempted to supply the city of Montgomery and its inhabitants with an abundant supply of pure, wholesome, deep well water. Defendant admits that on a few occasions, to-wit, four times, after a protracted drouth, for which it was in no way re-

sponsible, and which it could not anticipate, it has been compelled to obtain a part of its water supply from the Alabama river; but that this character of water was furnished only for a short period of time, and only so long as there was an absolute necessity therefor, resulting from a failure of its artesian wells to supply the usual amount of water. And defendant avers that the furnishing of other than artesian water by it on such occasions was not the result of any willful or wanton refusal on its part to comply in every respect with the provisions of said ordinance-contract; but the furnishing of such water was an imperative necessity, in order to protect the city of Montgomery and its inhabitants against the ravages of fire. * * * * * And defendant avers that at no time since the adoption of this ordinance or the construction of its said works, has the city council of Montgomery given any notice whatever of its intention to repeal said ordinance, nor has it been notified by the said city council that the works constructed by defendant have in any substantial or material particular failed to meet the requirements of the said ordinance-contract. And defendant avers that under the mutual agreement between it and the city council and the contract" made by it with an expert borer to bore for it additional wells for the purpose of supplying to the city and inhabitants of Montgomery a sufficient supply of pure, wholesome and deep well water, "it will be able to meet any possible demands upon it in the future for pure, wholesome, deep well water without regard to drouth, or other such contingencies. And defendant avers that from the beginning of the construction of its said works, it has employed nothing but experts in the building or construction of its works, or in the boring of its wells, and has acted in good faith, at all times, in attempting to carry out its contract with the city council of Montgomery, and the provisions of its charter according to their letter and spirit."

Demurrers were interposed to each of these pleas by the relator, assigning in various ways, that neither of the pleas were in law an answer to the complaint, and alleged no facts which constituted a sufficient reason to prevent the State of Alabama from enforcing the forfeiture of respondent's charter. These demurrers were all severally sustained, and the respondent declining to plead further, judgment was rendered annulling the

charter of respondent.    From this judgment respondent
appeals, and assigns as error the overruling by the
court of its demurrer to the declaration and it motion
to quash the writ, the sustaining of the demurrers to its
several pleas, and the judgment rendered, annulling its
charter.

J. M. FALKNER, for appellant.—The giving of secu-
rity for costs was a condition precedent to the right of
the relator to maintain the proceeding.    The giving of
security for costs being a condition precedent, the rela-
tor could not give such security after the suit was com-
menced.—Code of 1886, § 3168 ; *Taylor v. State ex rel
Hand*, 31 Ala. 383 ; *Tuskaloosa S. & A. Asso. v. State ex
rel. Murphy*, 58 Ala. 54.

It was an abuse of the authority conferred on the re-
lator in this suit to permit him to give an insolvent sure-
ty as security for costs in this proceeding, and the court
had the authority,and it was its duty, to exercise the power
to require the relator to give additional security.—Code
of 1886, § 649.

The motion to quash should have been sustained.    The
suit was not commenced in accordance with the statute
that provides that all civil suits should be commenced by
summons and complaint.    The proceeding was a civil
action.—Code of 1886, §§ 2651, 2652.    If it be that the
remedies given by the statute under which this proceed-
ing was instituted are only cumulative, and that this is
a proceeding in the nature of *quo warranto*, then it is
clear that the relator has no authority to institute the
present suit.—*State v. Moore*, 19 Ala. 514.

Under the pleas of the respondent, which set out the
ordinance-contract entered into between the city council
of Montgomery and the appellant, it is shown that the
city council had the authority to make the contract
therein set out.—*Intendant &c. of Livingston v. Pippin*,
31 Ala. 542 ; *Case v. Mayor of Mobile*, 30 Ala. 538 ; *Smoot
v. Mayor of Wetumpka*, 24 Ala. 112 ; *Port of Mobile, v. L.
& N. R. R. Co.*, 84 Ala. 120.    The sections 22 and 23 of
the ordinance-contract, set out in the respondent's pleas
furnish a full, complete and adequate remedy for any
violation or breach of it, on the part of the respondent,
and the remedies therein provided are exclusive of all
others.    Under the provisions of section 17 of the ordin-

ance-contract, it was provided that at each recurring period of five years after the passage of said ordinance, the city council of Montgomery had the right to elect to purchase the water works therein provided for, and the election of the city council to make this purchase furnishes a sufficient ground of justification for the respondent's failure to change the character of his work in any respect pending such an election, or of adding to the amount the city council would have to pay the respondent for the purchase of its water works.—*Linn v. Mc-Lean*, 80 Ala. 364.

The fifth plea of the respondent was the plea of the general issue, in which every fact set up in the relator's alternative writ was absolutely denied, and presented a complete defense.

The trial court erred in rendering judgment in behalf of the plaintiff. No evidence whatever was offered, and the court acted upon the idea that the plaintiff's remedy was a *scire facias* or the common law proceeding in the nature of *quo warranto*, and that no burden beyond the filing of the petition or the alternative writ rested upon the relator. This was erroneous.—4 Amer. & Eng. Encyc. of Law, p. 306, note; *Com. v. Cluley*, 95 Amer. Dec. 76.

GORDON MACDONALD, *contra.*—Willful neglect, abuse, misuse, or nonuser of its franchises by a corporation, or failure to discharge the obligations to the public imposed on it, either expressly or by implication in its charter, constitutes grounds for the forfeiture thereof.

High, Extr. Legal Rem. § 606; *People v. North River Sugar Ref. Co.*, 121 N. Y. 582, 9 L. R. A. 33; *People v. Kingston & M. Turnp. Road Co.*, 23 Wend. 198, 35 Am. Dec. 551; *Folger v. Columbian Ins. Co. & Trustees*, 99 Mass. 267, 96 Am. Dec. 747, note; *People v. Hillsdale & Co. Turnp. Road*, 23 Wend. 254; *Washington & B. Turnp. Co. v. Maryland*, 70 U. S. 3 Wall. 210, 18 L. Ed. 180; *People v. Utica Ins. Co.*, 15 Johns. 358, 8 Am. Dec. 243; *Atty. Gen. v. Tudor Ice Co.*, 104 Mass. 239, 6 Am. Rep. 227; Beach, Priv. Corp. § 54 d, note 3.

The same principles involved in determining the forfeiture of private grants for nonperformance of conditions are applicable to the forfeiture of charter grants to corporations.—*People v. Kingston & M. Turnp. Road Co.*, 23

27

Wend. 193, 35 Am. Dec. 551; *People v. Kankakee River Imp. Co.*, 103 Ill. 491; *State v. Brown*, 5 R. I. 1; *State v. Pennsylvania & O. Canal Co.*, 23 Ohio St. 121; *Com. v. Tenth Massachusetts Turnp. Corp.*, 5 Cush. 509; *Chesapeake & O. Canal Co., v. Baltimore & O. R. R. Co.*, 4 Gill & J. 1. The neglect or refusal to perform any of the duties to the public enjoined on the corporation by its charter, or by general laws, is sufficient to work a forfeiture of its charter.—*Lombard v. Stearns*, 4 Cush. 60; *People v. Hillsdale & Co. Turnp. Road, supra; Washington & B. Turnp. Road v. State*, 19 Md. 239; Beach, Priv. Corp., §§ 53, 54, notes; *Paschall v. Whittsett*, 11 Ala. 472; *Terrett v. Taylor*, 13 U. S. 9 Cranch, 51, 3 L. Ed. 653. The courts have no discretion and must declare a forfeiture where sufficient grounds are shown.—*State v. Minnesota C. R. Co.*, 36 Minn. 246; *People v. Northern R. Co.*, 53 Barb. 123; *State v. Pennsylvania & O. Canal Co.*, 23 Ohio St. 121. Excuse for failure to perform corporate duties are no reply to facts showing willful, deliberate abuse.— *People v. Kingston & M. Turnp. Road Co.*, 23 Wend. 206, 35 Am. Dec. 551. Cause of forfeiture, once committed, can not be attoned for by any subsequent good conduct. *People v. Hillsdale & C. Turnp. Road*, 23 Wend. 258. The state is not required to prove an actual injury to the public as a result of the corporation's wrongful acts. It is sufficient if their tendency be injurious.—Beach, Priv. Corp., § 54; *Commercial Bank v. State*, 6 Smedes & M. 599, 45 Am. Dec. 280.

The difference and litigation between the city of Montgomery and the appellant, and the acts of the city council, can furnish no excuse for the nonperformance of duties to the public enjoined on appellant by its charter. *Hart v. Boston, H. & E. R Co.*, 40 Conn. 524; *Washington & B. Turnp. Co. v. Maryland*, 70 U. S. 3. Wall. 210, 18 L. Ed. 180.

McCLELLAN, J.—This is a proceeding in the nature of *quo warranto*, prosecuted by the State on the relation of Macdonald against the Capital City Water Company, a corporation, under sections 3167 *et seq.* of the Code, for the dissolution of said corporation. It was commenced by petition or information on address to the judge of the city court of Montgomery. The petition avers that said company is an organized body acting as

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

a corporation, and claiming to be chartered under the laws of this State, and to have the franchise for the business of furnishing water through its system of water works to the municipality and residents of Montgomery for domestic and other uses, and is now engaged in that business, in which it operates steam pumps and uses the streets of the city for the purpose of running its pipes for the passage of its water to the consumers' thereof; that it is the clear and imperative duty of said company, under and by the expressed terms of the charter under which it is claiming and exercising the franchise to own and operate said system of water works, to furnish to the city of Montgomery and the residents thereof, at all times, a sufficient supply of pure, wholesome water for the use, domestic and otherwise, of said city and the residents thereof, which duty is the principal object and purpose of said company's corporate existence, and for the performance whereof it claims to be authorized to, and does charge certain rates to the city and its inhabitants; that "notwithstanding the clear and obvious duty of said Capital City Water Company, undertaking to exercise and exercising said corporate franchise as aforesaid, as to furnishing pure and wholesome water to said municipality and the residents thereof, yet in open and flagrant violation of said duties and willful misuse and abuse of the corporate franchises exercised by said Capital City Water Company, said company has for, to-wit, three years last past persistently refused and failed to perform said corperate duty of furnishing said municipality and the residents thereof for any purposes whatsoever any supply of pure and wholesome water, and said company still persists in refusing and failing to perform its said duty;" that said company "has and does still misuse and abuse, as aforesaid, the franchise operated by it as aforesaid, though frequently admonished of such failure in its duty and requested to obey and observe its corporate duties aforesaid." And the petition further avers and concludes as follows: "That by reason of the use and exercise of the franchise aforesaid by said Capital City Water Company, and its contract with the city of Montgomery as to furnishing good, pure and wholesome water to said city and its inhabitants, said muncipality and its inhabitants are now almost wholly dependent on said company for their

supply of water for domestic and other uses. That by reason of said Capital City Water Company's persistent misuse and abuse of its franchises and duties as aforesaid, in failing to supply said municipality and its inhabitants with a sufficient supply of pure and wholesome water as aforesaid, the health and comfort of the inhabitants of said city are greatly impaired and most seriously endangered to the great and incalculable damage of said city and its inhabitants, and they are wholly without any due and adequate remedy at law in the premises." The prayer of the petition is "for a writ of *quo warranto*, or some other appropriate writ, directed to said Capital City Water Company, commanding it to appear * * * * and show under what warrant of law it exercises the corporate franchises as aforesaid and acting as a corporation, and also show cause, if any it can, why its said charter, if it hath any such, should not be forfeited and annulled, and its corporate existence, if any such it hath, should not be dissolved."

Upon presentation of this petition to the judge of the city court, this order was made by him : "To the clerk of the city court of Montgomery : Let an alternative writ issue according to the prayer of the petition, returnable on the 10th of May, 1892;" and thereupon the petition and order were filed with the clerk of the city court, and on the same day a writ was issued in accordance with the prayer of the petition, addressed to the Water Company, reciting the allegations of the information and commanding said company to appear and show "under what warrant of law you exercise the corporate functions and franchises herein above set out, and also to show cause, if any you have, why your charter should not be vacated, and your corporate existence annulled."

The respondent company appeared and interposed a demurrer to the complaint, or petition, and also a motion to quash the writ. All the assignments of demurrer which are insisted on in argument are also set down as grounds of the motion to quash, and are available to the appellant, if at all, as well upon that motion as on demurrer to the petition. We, therefore, need only review the action of the trial court in overruling said motion.

The first ground of the motion proceeds on the theory that this proceeding should have been commenced by summons and complaint under sections 2651 and 2652 of the

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

Code, which provide ( § 2651 ) that all civil actions in courts of record, except as otherwise provided in the Code, must be commenced by the service of summons; and ( § 2652 ) that the summons must be issued by the clerk of the court and be accompanied by the complaint, signed &c. setting forth the cause of action. This position is, in our opinion, untenable. The statutory provisions in question have reference solely to the ordinary civil actions for the recovery of property or money, as is clearly demonstrated by a reference to the original statute, as found in the Code of 1852, ( § 2160 ), and as carried into the Revised Code (§ 2558), and into the Code of 1876 ( § 2924 ), which provides : "All civil actions in the courts of record of this State for the recovery of real estate, or any interest therein, or for waste or trespass on land, or for the recovery of money or personal property, or for the recovery of damages, (except in such cases as is otherwise provided by the Code) must be commenced by the service of a summons." The omission from the statute in the codification of 1886 of the specification of the civil actions covered by it manifestly was not intended to either enlarge or narrow its operation, but only to express the same proposition more concisely ; and there is nothing in its present context requiring or justifying an extension of its provisions to any case not originally within its terms, or to any action except those for the recovery of property or money. The sole purpose of the statute at first, all along and now was, has been and is to substitute a summons and complaint for the common law writ and declaration, and not to require proceedings which at common law were prosecuted by information or petition and the like, such as *mandamus*, prohibition, *certiorari*, *supersedeas*, *habeas corpus* &c., to be commenced by the service of summons and complaint. This view is strengthened by reference to the provisions of the Code in respect of the form of the summons required to be issued and served in "all civil actions," as well by the present as all former Codes, and by the forms of complaint found in all the Codes. None of these forms are adopted to other actions than those for the recovery of property or money or damages ; and it has never been supposed that any of the extraordinary proceedings noted above should or could be commenced by a summons accompanied either

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

by a common law declaration or by a complaint in any form analogous to those given. Moreover, *quo warranto* was not even a civil proceeding at the common law, but criminal in its nature, involving severe pains and penalties; and now that it has been shorn of these consequences it still cannot be said to be a "civil action" within statutes like section 2561 of the Code which is defined: "An action which has for its object the recovery of private or civil rights, or compensation for their infraction."—Bouvier's Law Dict.; 3 Amer. & Eng. Encyc. of Law, p. 257.

And, beyond all this, it may well be said to be the settled practice in this State to commence proceedings under sections 3167 *et seq* of the Code by information, or petition in the nature of an information, setting forth the facts and praying a writ of *quo warranto*, as in the case at bar.—*Tuskaloosa Scientific & Art Association v. State ex rel. Murphy*, 58 Ala. 54; *The State ex rel. Sanche v. Webb et al.*, 97 Ala. 111; and this practice is expressly approved, with reference to similar statutory provisions, by the Supreme Court of New Jersey, *Attorney General v. The Delaware & Bond Brook R. R. Co.*, 38 N. J. L. 282, where it is also decided that this proceeding is not "an action," within statutes like section 2651 of our Code.—*State v. Roe*, 2 Dutcher, 215.

It was not necessary for the relator to obtain leave or an order of any court to institute and prosecute this proceeding before filing the information or at all, as is insisted by the second ground of the motion to quash.—*Tuskaloosa Scientific & Art Association v. State ex rel. Murphy*, 58 Ala. 54; *State ex rel. Sanche v. Webb et al.*, 97 Ala. 111.

The remaining grounds of the motion to quash are obviously ill taken, and as they are not insisted upon by appellant's counsel we shall not discuss them. The motion to quash the writ was properly overruled.

The respondent also moved to dismiss the proceeding for that the relator did not give security for costs before filing the information. It is quite true that in such cases security for the costs must be given before the proceeding is instituted, and cannot afterwards be supplied if seasonable objection be made.—*Taylor v. State ex rel. Hand*, 31 Ala. 383. But it is equally well settled that where the security is in fact given after the suit has

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

been commenced, the respondent may waive the irregularity; and that he does waive it by proceeding with the cause and omitting to move with reasonable promptness for a dismissal on account of it. This proceeding was begun on April 27, 1892. The security for costs was approved and accepted by the clerk of the court on May 2, 1892. The respondent filed his demurrer and motion to quash on May 10, 1892, and afterwards its pleas to which the petitioner demurred, and when the case came on for hearing in February, 1894, this motion to dismiss on the ground that security for costs was not given before the commencement of the proceeding was for the first time interposed. Under these circumstances the court properly overruled it.—*Duncan v. Richardson*, 34 Ala. 117; *Weeks v. Napier*, 33 Ala. 568; *Heflin v. Rock Mills M. & L. Co.*, 58 Ala. 613.

We cannot affirm that the trial court should have granted respondent's motion ''to require the relator to give other or additional security for costs of this suit, for the reason that the security given by the relator, to-wit, T. Gardner Foster, is insolvent,'' because the evidence adduced in support of the motion only went to show that according to the tax records of the county he had only three hundred and twenty dollars of taxable property. He may have been perfectly solvent notwithstanding he had only that amount of taxable property in the county of Montgomery.

The respondent filed several pleas to the information and writ of *quo warranto*. Demurrers were interposed to each of these pleas, and sustained by the court; and the respondent declining to further plead, judgment was entered dissolving the corporation. We are now to consider the sufficiency of said several pleas, and, before proceeding to that, it is to be recalled that the information avers a charter duty upon the respondent to supply the city of Montgomery and the residents or inhabitants thereof with pure and wholesome water, sufficient in quantity at all times for domestic and other uses, and that said corporation had failed and persistently fails and refuses to perform this duty, which was the chief object and end of its creation and existence, and to supply said city and its people at all times with pure and wholesome water sufficient for their uses. The several pleas of the respondent admit that it was the duty of the

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

Capital City Water Co. under its charter "to supply the city of Montgomery and its inhabitants with clear, wholesome and deep well water, suitable for all domestic and ordinary manufacturing purposes, and sufficient in quantity for all uses of said city and its inhabitants;" and they severally set forth as an exhibit the declaration and certificate of incorporation of said company, constituting and being the act or charter creating said corporation, wherein the objects, powers and duties of said corporation, so far as they are involved in this case, are declared, granted and imposed in the following language : ''The object for which this corporation is formed is to supply water to said city of Montgomery, and to build, construct, lay, set, use and operate pumps, reservoirs, mains, pipes, hydrants, wells and the necessary fixtures in and near said city of Montgomery ; and to supply to said city and its inhabitants clear, wholesome and deep well water, suitable for all domestic and manufacturing purposes, and sufficient in quantity for all uses of said city and its inhabitants, as set forth and provided in a certain ordinance-contract ordained by the honoroble City Council of said city on, to-wit, the 7th day of October, 1885—granting to Arthur H. Howland, his associates, successors and their assigns the right to lay down, use, and maintain water-mains, pipes and aqueducts and other fixtures pertaining to supplying a water supply to and in the city of Montgomery * * * * * * * * and to carry out and perform said contract in all respects and particulars according to the true meaning and intent thereof on the part of the said Arthur H. Howland, his associates, successors and assigns, and to use, exercise and enjoy all the rights, franchises and privileges at any time owned, possesed or enjoyed by said Arthur H. Howland, his associates, successors or assigns under and by said ordinance.'' The ordinance-contract referred to in the declaration of incorportion is also made an exhibit to and set out in the pleas, and it is claimed that certain provisions thereof, taken in connection with certain action or omission to act on the part of the city council under such provisions, qualify the otherwise absolute duty of the corporation to furnish at all times water of the prescribed quality and quantity to the city and its inhabitants, and justify whatever of failure may have occurred in that

behalf, and it is also claimed that certain of said provisions in and of themselves afford an adequate and indeed the only remedy for an abuse of its franchise by the corporation. Upon the information and the writ, therefore, as also upon the confessions of the pleas and the provisions of respondent's charter exhibited by the pleas, the case presented involves a charter duty resting on the Capital City Water Company to supply water of the prescribed quality and adequate quantity to the city and its inhabitants at all times; and upon the information and writ the case presented involves a willful failure on the part of said company to discharge and perform this duty. The duty is obviously a public one and of vast importance to the municipality and people of Montgomery. It is of no less consequence in respect of the *quality* of the water to be supplied than in respect of its quantity and constancy of the supply. The "act creating the corporation" is equally imperative in respect of the quality and quantity and continuity of the supply of the water for the furnishing of which to the city and the residents thereof the corporation was organized, chartered and invested with the valuable franchise of constructing and operating a system of water works in the city of Montgomery. Nay more: it is readily conceivable that to supply the city and its inhabitants with impure, unwholesome and polluted water would be more disastrous than to supply an insufficient quantity of pure water or even none at all. And so in respect of the constancy of the supply: The charter requires the prescribed water to be furnished at all times without exception. And to fail in this duty for any material length of time is as much a breach of corporate duty, as much an offense against the charter and abuse of the franchise granted, as a total failure in that regard, though not so mischievous in results. Hence, we feel no hesitation in affirming that a failure to constantly furnish water of the prescribed quality is an offense against the act creating this corporation within the terms of section 3167, clause 1, of the Code, unless justification or excuse for such failure on the particular facts under which it occurred can be found in the charter of the corporation. Recurring to the pleas of the respondent, it is to be considered whether they severally either negative the charge of failure made by the petition and recited in the writ, or, without such

negation, present facts which excuse or justify such failure in such sort as to strip it of the essentials of an offense against the charter of the respondent company, or failing this, whether they present a case which addresses itself to the discretion of the court and requires an exercise of that discretion in the respondent's favor.

Respondent's first plea does not negative the failure of corporate duty laid in the information. Construing it, as all pleas must be construed, most strongly against the pleader, it, in the first place, only claims that the Water Company discharged the duty in question for the first five years after its organization and incorporation, and the completion of its works—that is down to the year 1890; and this is to be taken as a confession that it has not performed that duty during the two years elapsing from 1890 to 1892, when this proceeding was commenced. And the plea proceeds, upon the assumption of failure to supply pure and wholesome water continuously during said last named period, to state facts which are intended to afford justification or excuse for such failure; thus emphasizing the admission of its failure. After this it proceeds to aver that the city and its inhabitants are entirely dependent upon the respondent for a supply of water for fire and sanitary purposes and that should the company's charter be taken away from it, the city will be left without any supply of water for either of said purposes, and further "that many of the inhabitants of said city are now depending solely upon the defendant for their water supply, and they are now and have been at all times since the construction of defendant's works furnished with an abundant supply of pure, wholesome and deep well water and sufficient in quality and quantity for all the wants of the city and its inhabitants; and defendant avers that if its charter was forfeited it would have no right to supply either the city of Montgomery or its inhabitants with water, or to operate its works in any way, and it would result in irreparable injury, and in probable devastation and ruin to this city and its inhabitants." It was not intended by the pleader to aver in the above excerpt from the 1st plea that the respondent had at all times supplied pure and wholesome deep well water to the city and its inhabitants; and counsel for the defendant do not at all insist upon that interpre-

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

tation of the plea. To give it that construction, more-
over, would render the plea duplex and inconsistent
with itself, for that in the first part of it, the respond-
ent confesses failure to supply water as prescribed in its
charter and attempts to excuse and justify such failure.
But, more than this, in the averment quoted it is not
stated that the *respondent company* has at all times furn-
ished the prescribed water supply, but only that such
*supply has been* furnished, and this not to the *city of Mont-
gomery and its inhabitants*, but to "*many* of the inhabi-
tants of the city of Montgomery" only. This whole
averment was obviously intended as a mere basis for the
further conclusion stated in the plea, that to dissolve the
respondent corporation would stop all supply of water
and "result in irreparable injury, and in probable de-
vastation and ruin to this city and its inhabitants," and
so it seems to be considered by counsel. There is, then,
we conclude, no denial in this plea of the failure to sup-
ply water of the prescribed quality charged in the peti-
tion and set out in the writ. Nor is there any denial of
the charge of failure to supply water of the prescribed
quality made by the petition and recited in the writ at-
tempted in respondent's 2d plea; and the 4th expressly
admits that the respondent has not at all times since the
completion of its works supplied the city of Montgomery
and its inhabitants with pure and wholesome water as
required by the charter of the corporation.

Respondent's 5th plea contains this averment: "And
defendant avers that it has from the beginning until
now complied in all respects with all the terms and con-
ditions" of the ordinance-contract between it and the
city, "and has fully performed all its duties arising out
of its charter by providing a system of water works of
sufficient capacity and power to furnish the city of
Montgomery an abundant supply of pure, wholesome,
deep well water, sufficient for all the purposes of the
city and its inhabitants. And it avers that each and
every assignment of breach in this respect as set forth
in plaintiff's alternative writ, heretofore served upon
this defendant, are wholly untrue." It is insisted by
counsel for appellant that this averment is a denial
of the charge that the company has failed
to supply the city and its inhabitants with pure
and wholesome water, and that this plea presents

the general issue upon said charge. The position is not tenable. The plea does not allege facts showing that the pleader has performed its charter duty in the respect in question, but only a general conclusion of compliance with its engagements to the city and performance of all its corporate duties. This conclusion may be based, and indeed, as appears from the plea itself, is based upon an wholly unwarranted and erroneous construction of the charter by the pleader. The plea sets forth that the company has performed all its charter duties not indeed by the construction of suitable works of adequate capacity *and* by furnishing the city and its inhabitants at all times with a sufficient quantity of pure, wholesome, deep well water, but only that it has performed its charter duty and complied with all the requirements of the act creating it, "by providing a system of water works of sufficient capacity and power to furnish the city of Montgomery an abundant supply of pure, wholesome, deep well water, sufficient for all the purposes of the city and its inhabitants." It is not averred in this plea that the Water Company has in fact supplied water of the requisite quality and quantity to the city and its inhabitants at all times or indeed at any time, but only that it has a system of works *capable* of supplying water according to the charter. On the construction which we are asked to put upon this plea the whole charter duty of the respondent would be fully performed by the building of its system of works though no drop of water ever passed through the system to the city of Montgomery and its inhabitants. And the concluding sentence of the plea is in affect merely an averment that all charges of the petition and writ in *respect of the construction of a system of water works of adequate capacity* are untrue. The *gravamen* of the petition and writ is a failure, not to construct the works but, to supply pure and wholsome water, and the fact of the construction is no answer to the charge of a failure to operate the works so as to supply the water required by the charter to be supplied, but on the contrary goes in aggravation of such failure.

The 6th and only other plea of respondent makes no pretense of denying the charge that the corporation has failed to supply water as required by the charter at all times to the city of Montgomery and its inhabitants, but

admits as does the 4th plea, "that on a few occasions, to-wit, four times, after a protracted drouth, for which the company was in no way responsible, and which it could not anticipate, it has been compelled to obtain a part of its water supply from the Alabama River, but that this character of water was furnished only for a short period of time, and only so long as there was an absolute necessity therefor, resulting from a failure of its artesian wells to supply the usual amount of water."

It is thus seen that none of the respondent's pleas deny, and some of them expressly, and all except the 5th inferentially, admit that the corporation has not at all times supplied the city and its inhabitants with pure and wholesome water &c.

Several matters are set up in justification of this failure and in avoidance of the consequences thereof. These are all based, as we have seen, upon certain provisions of the contract between the city and the company and referred to in the declaration of incorporation. First it is insisted by the pleas that the fact that the city had and exercised an election to purchase respondent's works in 1890 excused the company from all duty to increase the supply of pure, wholesome, deep well water to meet the wants of the city and requirement of the charter, and justified the furnishing of river water for the two years or more ensuing during which time the city and the company were disputing over the price the former should pay for the works, the company having the while the full possession and control and, being in undisturbed operation, of its works, and presumably in the receipt of the full rates of compensation fixed by the contract for supplying the city and its inhabitants with pure, wholesome, deep well water sufficient at all times for the uses of the municipality and the residents thereof. The essence of this plea is that notwithstanding the absolute charter duty of the defendant to supply pure, wholesome, deep well water, and notwithstanding there is not one word in this contract which qualifies that duty, yet the company need only perform it when the circumstances are such that to do so will entail no expense upon it except such as the city would have to pay should it ever elect to purchase the works. The principle of the plea would justify the company in supplying polluted, pestilential water to the people for years and charging

and receiving compensation as for pure and wholesome water solely upon the ground that to supply the water the corporation was chartered to supply, contracted with the city to supply and which it is at all times paid to supply, would entail some expense upon the company. This, with what was said of this defense when the case was formerly here, will suffice to dispose of it.—*State ex rel. Macdonald v. Capital City Water Co.*, 102 Ala. 231.

Again it is stipulated in said ordinance-contract that the ordinance may be repealed on ninety days notice to said corporation "if at any time the works herein provided for to be constructed by the said Arthur H. Howland, his associates, successors or assigns, shall in any substantial or material particular fail to meet the require- of this contract unless within said ninety days" said works shall have been made to conform to the provisions of the contract. And it is claimed that this right of the city to rescind the contract is the remedy and the only remedy for an abuse by the corporation of the franchises which the State has granted to it for the public good. This right of rescission does not upon its face, as given in the contract, import any power in the city to vacate the respondent's character or to disurb in any way its corporate existence, but only to avoid a contract which, so far as it was of benefit to the respondent, authorized it to charge certain rates for water furnished by it to the city and its inhabitants. So that if it be conceded that this ordinance-contract becomes a part of the charter of the respondent corporation because of the reference to it in the declaration of incorporation, this power of annulling the contract would not be the power of vacating the corporation. Whatever the city's competency to make this contract, it had not the sovereign power of breathing life into the corporate entity, and whatever its right to annul the contract, it was impotent to take away the life of the corporation. The State gave and the State only can take away that life. Considering the contract as a part of the charter the State might declare a forfeiture of the charter for infractions of duty imposed by the contract, but it by no means follows that the city, having powers only in respect of that part of the charter embraced in the contract, could exert any influence upon the vital principle of corporate existence which emanated from the State. The case is

analagous to the Turnpike cases to which we have been referred, in which it was insisted that the right vested by the charters or general statutes in supervisors to throw open toll gates on the roads of the corporations upon their failure to construct and maintain roads of a certain character prescribed in the charters, and the fact that this had been done by the supervisors, precluded the State from enforcing forfeitures of the charters for such failure. But the position was held unsound, the court in one case saying: "That the inspectors may throw open the turnpike gates is no argument against forfeitures for non-repair; the application to them is but a cumulative remedy, * * * * but the statute does not forbid the remedy by information any more than the statute giving a summary remedy to the landlord against his tenant may be said to inhibit the action of eject-ment."—*People v. U. & C. Turnpike Co*, 23 Wend. 254; and in another case: "I am entirely satisfied that it could form no bar to this proceeding, even admitting * * * * * * * * that the gates were opened under a judicial order of an inspector of turnpikes, per-suant to the statute. Such a step, if noticeable at all, would operate rather to ascertain and stengthen the case against the company, than as furnishing matter of de-fense."—*People v. B. & R. Turnpike Co.*, 23 Wend. 247.

There is another provision of this ordinance-contract to the effect that if any unforeseen or inevitable acci-dent should happen to any part of the respondent's sys-tem of water works, the company should have a reason-able time to repair injuries resulting from such acci-dent, and that such "accident and the reasonable time rendered necessary to repair or provide for the same as aforesaid shall never be construed to be a breach of this contract or any cause for repealing this ordinance," &c., &c.; and this stipulation of the contract is set up in de-fense to the writ in this case. As no "unforeseen or inevitable accident" is averred it is difficult to see what pertinency this stipulation has to the issue in the case. Surely a drouth is not an "accident," and a failure of the company to bore wells shown to be necessary to an adequate supply in seasons of drouth can in no sense be charged to an "unforeseen or inevitable accident."

So much for the matters relied on in justification of the failure of respondent to supply at all times the water

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

prescribed by the charter; or as qualifying the corporate duty in that regard. Very clearly, we think nothing which is alleged or which appears by the ordinance-contract either qualifies in any degree the absolute corporate duty in that behalf or justifies the failure to perform that duty averred in the petition and not denied in the pleas. It only remains to be considered whether on the case presented by the petition and writ on the one hand and the pleas on the other, we should in the exercise of a sound judicial discretion refuse to declare respondent's charter forfeited notwithstanding the failure of duty and consequent of abuse of franchise which it admits, or rather whether we should hold that its pleas were sufficient to invoke an exercise of that discretion in its favor by the court below. These pleas show that commencing the latter part of 1890 or in 1891 and extending down to the time of plea filed in February 1894, there have been four periods during which river water and not pure, wholesome, deep well water was supplied to the city of Montgomery and its inhabitants. It is said that these periods were "short," but how short or long is not shown. For ought that is alleged they may as well have covered a month or more on each occasion as a day. It is shown that these periods occurred during protracted drouths which almost always occur in the heated season, when it is fair to assume river water is specially impure and the use of impure water is especially dangerous. It is shown that the respondent was fully conscious of the incapacity of its wells to meet the requirements of its charter duty certainly as early as the year 1890, and then after resolving to sink additional wells in order to perform the duty resting upon it, failed for an wholly insufficient reason to make any effort in that direction, and went on in disregard of its said duty without other effort or purpose to meet its obligations to the public for more than two years, meantime failing to supply for indefinite periods in the most unhealthy seasons of the year the pure, wholesome, deep well water required both by the grant of the State and the contract with the city. It is not pretended that the respondent was unable for any reason to supply the water: there seems to be no question at all but that an abundant supply of this water could have been reached and utilized by the company. If it were unable to supply the

[Capital City Water Co. v. The State *ex rel.* Macdonald.]

water, that itself would be a ground for vacating its charter. Knowing all this time from 1890 to 1892 .the urgent necessity for additional wells, having the ability to sink them and thereby secure and furnish to the city an abundant supply of pure and wholesome water, and having failed for so long to make any effort to that end, it would be a confusion and a misuse of terms to say that this default in respect of a plain, absolute and practicable duty was other that a willful abuse of the franchise granted by the State and a willful offense against the act creating the corporation." Why should not the penalty for this offense be visited upon the respondent? What facts are set forth in the pleas to challenge the discretion of the court in favor of continued corporate existence, and to furnish reasons for allowing the company to further exercise the franchise which it has abused? For one thing, it is said that if the charter is vacated all water supply will at once cease and the city will be exposed in consequence to utter devastation and ruin. There is nothing in this dire prognostication. The law is not wanting in means and instrumentalities for the administration of the affairs and the carrying on of the business of this company *ad interim* and ultimately winding it up and passing its system of works into other hands charged with a more faithful performance of the great public duty of supplying the city and its people with wholesome water, and thereby subserving the end for which this company was brought into existence and which it has failed to meet.

Again, it is said that the respondent is now, or was when the case was heard in February last, after having pretermitted all effort in that direction for more than two years and until, and even for a year after, this proceeding was begun, exerting itself to sink a sufficient number of additional deep wells to furnish the water supply required by its charter, and the promise is made by the pleas that these efforts will be continued unremittingly, and with the greatest diligence and skill until they are crowned with success. That this fact, transpiring after the franchise has been sufficiently abused to authorize and require the forfeiture of corporate existence, and after proceedings for forfeiture had commenced and been pending for a year, and this promise of the performance of corporate duty in the future, can

28

exert no influence by way of curing the abuse already committed or of absolving the company from responsibility for the offense of which it has already been guilty, constituting a legal ground of forfeiture, is most clear. *People v. H. & C. T. Co.*, 23 Wend. 254, 258.

And this fact and promise are equally impotent and vain as an invocation to judicial discretion. The fact is not a new one in the history of this company developed in the pleadings here. There have been former occasions, according to the pleas, when the company had resolved upon the sinking of additional wells and set about the execution of that purpose only to turn away from it. upon wholly insufficient considerations. And the promise is no greater obligation than has all along rested upon the company to do the very thing it now promises to do ; and as that obligation has not sufficed in the past to keep the corporation up to the mark of this most vital duty, it would not be wise to rely upon the promise for the future. And as the company has in the past with full consciousness of duty unperformed been easily diverted from its tentative resolution to discharge it, it is not harsh to say the future can not be contemplated without grave apprehension that when the sword of this writ no longer hangs over its life the present resolution to discharge its duty would lose its force, the present night and day effort to sink wells would lose its energy, and upon some entirely insufficient consideration, invited to lodgement in the mind of the company by the abortion of this proceeding, there would be another default of duty, the resolution would become infirm, the work would cease, the town would continue to be supplied with impure and unwholesome water, and the object and end of corporate existence would go unaccomplished and unattained.

There are averments of good faith, of great skill and perfection in the construction by the respondent of its system of water works, of the use of the most approved machinery and appliances and the most expert human skill in the service of the city and its people; but all these have fallen short of meeting the plain and simple requirement of the chart of respondent's life that it should furnish the city of Montgomery and its inhabitants with pure, wholesome, deep well water, sufficient at all times for their domestic and other uses. We have,

[Moore v. Lee.]

and in the nature of things can have, no sufficient as-
surance that this duty will be performed in the future.
The interests involved are most vital and important, in-
volving the health and lives, it may well be, of the in-
habitants of the city and the public. We feel that a
sound judicial discretion requires the removal of this
corporation from the important work it has so ill per-
formed, that it may be committed to other agencies
having a juster appreciation of the trusts imposed and a
quicker sense of the duties to be discharged.

None of the pleas, we therefore conclude, present any
denial of the abuse of franchise charged by the petition
and writ, nor any justification or excuse for such abuse,
nor set up any fact which should have challenged the
discretion of the city court to a denial of the prayer of
the petition notwithstanding the charges made were con-
fessed. The city court properly sustained demurrers to
each of the pleas. The respondent declining to plead
further, nothing was left for the trial court but to enter
a judgment forfeiting the respondent's charter and ous-
ting it of the franchises thereby granted; and that judg-
ment is affirmed.